## CURTIS v. RENNEKER.

1. GEN. STAT., § 1831—RECORD NOTICE OF UNSATISFIED MORTGAGE.— The record of the assignment of a mortgage is not a record of "a note of some payment on account or some written acknowledgment of the debt secured thereby" within the meaning of section 1831 of General Statutes.

2. IBID.—MORTGAGES—RETROSPECTIVE STATUTES.—The statute limiting the lien of a mortgage to twenty years, unless within that time record notice is given of its continued vitality, does not apply to mortgages antecedently executed, an intention to give a retroactive operation to the act not being therein expressed or necessarily implied.

3. RETROSPECTIVE STATUTES—CASE CRITICISED.—The words of a statute may require a retroactive operation to be given to one subject, from the necessity of the case, and only a prospective application to another subject in the same provision as to which no such necessity exists. Hence the distinction between this case and *Henry* v. *Henry*, 31 S. C., 1.

4. CONSTITUTIONAL LAW.—The delicate question of constitutionality of a statute not considered, because not necessary to a decision of the case.

5. SUIT ON BOND AND ON MORTGAGE—DAY IN COURT.—The maker of a bond and mortgage was sued to judgment at law on the bond, but such judgment never acquired a lien. Afterwards, under a decree of foreclosure and sale, a judgment was entered up for the deficiency on the sale. *Held*, that the first judgment on the debt, not being interposed as a bar to the second judgment for the deficiency, such second judgment could not be afterwards assailed upon the ground that the matter had been previously determined.

6. TAX SALES—EXECUTION—CASE CRITICISED.—Land could not be sold for the non-payment of taxes under the tax act of 1877, without first exhausting the remedy of execution against personal property. *Ebaugh* v. *Mullinax, ante* 364, approved.

Before FRASER, J., Charleston, February, 1890.

The reports of Master Miles were as follows:

### FIRST REPORT OF MASTER.

By order of his honor, Judge Norton, filed 12th June, 1888, this case was referreed to me to hear and determine all the issues therein and to report my conclusions thereon, with leave to report any special matter.

I have been attended by the solicitors of the parties, and have taken testimony as hereinafter stated. The original complaint (filed 15th March, 1888) was for the foreclosure of a mortgage of a lot of land and buildings at the southeast corner of King and Queen streets, in the city of Charleston. The said mortgage is dated 27th March, 1867, and was given by John H. Renneker and Adam B. Glover to L. E. Amsinck & Company to secure their joint and several bond conditioned for the payment of $3,-084.38. A payment of $1,500 having been made on said bond and mortgage on 7th April, 1868, the said bond and mortgage were on 6th January, 1882, assigned by L. E. Amsinck & Co. to John H. Renneker (then John H. Renneker, *junior*), and on 9th January, 1882, assigned by the said John H. Renneker, jr., to the plaintiff, J. Alice Curtis.

The complaint states the deaths of John H. Renneker and Adam B. Glover, and the devolution of title. Joseph W. Harrisson, who recovered judgment 16th July, 1869, against Annie B. Glover, as administratrix of Adam B. Glover, and William E. Butler, as executor of Hannah Enston, who recovered judgment 16th May, 1872, (decree enrolled 15th July, 1881) against John H. Renneker—and John H. Renneker, jr., claiming a lien under deed from the City Council of Charleston (dated 10th January, 1882), were made parties defendant.

At a reference held on 6th July, 1888, the plaintiff proposed to produce in evidence certain testimony discovered subsequent to the filing of the complaint, viz., the proceedings in the Court of Common Pleas, Charleston, in the case of "John H. Renneker, survivor of the firm of Renneker & Glover, *v.* Annie B. Glover *et al.*," filed 18th March, 1868, under which proceedings the lot at the corner of King and Queen streets was sold and conveyed to John H. Renneker, surviving partner, in severalty.

(Deed dated 24th March, 1871.) The solicitor for the defendants, Harrisson and Butler, executor, judgment creditors, objected to the competency of this evidence, because inconsistent with the allegations of the complaint as to the title of the mortgaged property.

On the 10th September, 1888, a motion, upon notice to the solicitors in the cause, was made before me for leave to amend the complaint in accordance with the facts shown by the testimony discovered after filing the complaint. I granted an order to amend the complaint, upon payment of the costs of the answers of the defendants, Harrisson and Butler, executor, by the plaintiff, at the termination of the suit. I also granted an order that the complaint be dismissed as against the defendant, John B. Glover, with costs to be paid by the plaintiff at the termination of the suit; and as against the defendants, Annie Hughes and Samuel Hughes, without costs, the said defendants not having answered and being in default. The amended complaint was filed 1st October, 1888. The defendants, Harrisson and Butler, executor, filed answers to the amended complaint 24th October, 1888, asserting their liens on the mortgaged property, and denying the right of plaintiff to the amount claimed to be due to her under the mortgage.

By the decree of his honor, Judge Wallace, made with consent of all parties (none of whom are minors), filed 6th December, 1888, it was ordered that I, as master, without waiting to make and file a report, proceed to sell the mortgaged premises, free and discharged from all encumbrances, at public auction, after due advertisement, upon the terms therein prescribed; one of said terms being that the purchaser have the option to pay all cash—the purchaser to pay all taxes payable in 1889. In conformity with this decree, after due advertisement, as therein directed, I sold the mortgaged premises described in the pleadings and decree, at public auction, on the 10th day of January, 1889, to Samuel B. Renneker, for the sum of one thousand seven hundred dollars, he being at that price the highest bidder for the same. Samuel B. Renneker in writing transferred his bid to Edward J. Lewith. The said Edward J. Lewith, on 9th August, 1889, complied with the terms of sale by paying to me the entire

purchase money in cash, seventeen hundred dollars cash, and I have executed and delivered to him a conveyance of the property.

| | | | |
|---|---|---|---|
| I have, in accordance with said decree, from the proceeds of sale as above stated, | | | $1,700 00 |
| Paid "the expenses of said sale," viz., News and Courier advertising, | | $22 20 | |
| And for "taxes which were a lien on said property at time of sale (excepting the taxes payable in 1889, to be paid by purchaser)," viz.: | | | |
| City taxes for 1887, | $23 20 | | |
| City taxes for 1888, | 28 59 | 51 79 | 73 99 |
| | | | $1,627 01 |

Leaving sixteen hundred and twenty-seven 1–100 dollars in my hands, which, under said decree, I hold subject to the further order of the court.

By order of his honor, Judge Pressley, filed 23rd August, 1889, Edward McCrady, jr., Esq., was substituted as plaintiff's attorney in place of T. W. Bacot, Esq., and J. M. Bacot, Esq., was substituted as attorney for the defendants, Louisa E. Renneker and Kate H. Schirmer, in place of Edward McCrady, jr., Esq.

Thomas W. Bacot, assignee of John H. Renneker, one of the defendants, on 4th September, 1889, filed his petition for leave to intervene in the cause, and his honor, Judge Kershaw, by order filed 4th September, 1889, granted leave to the said T. W. Bacot, assignee, to intervene for the rights and interests which he represents, and that the plaintiff make him a party, with leave to said assignee to contest the claims of the judgment creditors, and to establish his rights; the petition of the said T. W. Bacot, assignee, to be· held and taken as his answer to the complaint herein from the date of the filing of the same, and that any party to the cause have leave to reply to the same; and that the master proceed under the order of reference heretofore made to inquire into and report upon the issues raised by said petition or answer.

I respectfully recommend that the sale to Edward J. Lewith

be confirmed; and that all rights and equities of the parties being transferred to the funds in my hands as herein reported, I proceed to hold references and to make further reports, as directed by the orders in the cause.

### SECOND REPORT OF MASTER.

For a statement of the pleadings, of the sale under the decree filed 6th December, 1888, of the payments made by me thereunder, and of the balance remaining in my hands subject to the further order of the court, to wit, sixteen hundred and twenty-seven 1–100 dollars, I respectfully ask leave to refer to my report in this case, dated and filed 26th October, 1889, which report was in all respects confirmed by the order of his honor, Judge Hudson, filed 29th November, 1889. By the said decree of sale, any and all claims or liens on the premises sold of the parties to the action were transferred from said premises to the proceeds in the hands of the master, after payment thereout of the expenses of such sale and any taxes which may be a lien on said premises at the time of such sale. My report shows, that out of the proceeds of sale I paid the expenses of sale and such taxes as were a lien; but did not pay any costs of these proceedings, which should be provided for in the final decree which shall be made in the cause.

The claimants of the fund in my hands are:

1. The plaintiff, J. Alice Curtis, the assignee and holder and owner of a mortgage from John H. Renneker and Adam B. Glover, copartners under the firm name of Renneker & Glover, for the foreclosure of which this action is brought.

2. Joseph W. Harrisson, who recovered judgment against Annie B. Glover, administratrix of Adam B. Glover, for $177.-81 on the individual debt of said Adam B. Glover, on 16th July, 1869.

3. The estate of Hannah Enston, deceased, based upon a judgment in the Court of Common Pleas for Charleston County, recovered by said Hannah Enston against John H. Renneker, survivor of Renneker & Glover, for $7,588.72, on 16th day of May, 1872; and a judgment and money decree against John H. Renneker, survivor of Renneker & Glover, for $4,714.68, with

interest from 26th March, 1878, entered on 15 day of July, 1881, in a suit for foreclosure of a mortgage which secured the bond upon which the above judgment was recovered, this decree being for the deficiency after applying the proceeds of sale of the mortgaged premises to the mortgage debt. This suit was instituted on 12th May, 1877; John H. Renneker was a party defendant and answered. This claim is set up by William Enston Butler, executor of Hannah Enston.

All the above claimants are parties to this action.

4. Thomas W. Bacot, assignee of John H. Renneker, the younger, who, upon his petition to intervene, was, by order of his honor, Judge Kershaw, filed 4th September, 1889, made a party defendant, with leave to contest the claims of the judgment creditors, and by all lawful means to establish his rights, who claims under a conveyance of the premises made to him by the City Council of Charleston, dated 10th January, 1882, and a conveyance of the same lot to the City Council of Charleston by the Commissioners of the Sinking Fund of the State of South Carolina, dated 20th July, 1881.

I have held frequent references and taken the testimony which is herewith filed. The case has been presented and argued by the solicitors representing the several interests with great care and ability. I will not undertake to follow the several arguments in detail, but will endeavor to state clearly the positions taken and my conclusions thereon, so as to enable the court to understand and decide them.

*First—The Mortgage Debt.* The original bond and mortgage of J. H. Renneker and Adam B. Glover to L. E. Amsinck & Co. have been produced and proved, and are herewith filed. They are dated 27th day of March, 1867. The condition of the bond is for "the payment of $3,084.38 in three equal successive instalments, payable in six, nine, and twelve months from date, together with interest at the rate of seven per cent. per annum from 22nd January, 1867, on the whole amount of the indebtedness, payable at the date of the payment of each instalment." The mortgage recites the condition of the bond in full. It was duly proved and recorded in mesne conveyance office, Charleston, book C, No. 15, p. 119, on 29th March, 1867. Upon the original bond

is endorsed a receipt, dated 7th April, 1868, by the mortgagees, through their attorney, W. Alston Pringle, from J. H. Renneker, of fifteen hundred dollars on account of the bond. (This payment is also proved by the testimony herewith filed.)

On the original bond is also endorsed an assignment by the mortgagees, L. E. Amsinck & Co., for valuable consideration, to J. H. Renneker, jr., dated the 6th day of January, A. D. 1882. The evidence herewith filed proves that this assignment was made to John H. Renneker, jr. (the son of the mortgagor, J. H. Renneker), in consideration of the sum of $700 cash paid by him; and that the said John H. Renneker, jr., took and held possession of this lot, receiving the rents upon it up to the time of his failure, when, on 9th January, A. D. 1882, he assigned it *bona fide* and for valuable consideration to Mrs. J. Alice Curtis, the plaintiff. This assignment is also endorsed on the original bond. The assignment by L. E. Amsinck & Co. to J. H. Renneker, jr., dated the 6th day of January, 1882, is endorsed upon the record of the mortgage in M. Con. office. The receipt on the bond for $1,500 on account, dated 7th April, 1868, does not appear on the record of the mortgage.

The solicitor for the judgment creditors contends that this mortgage ceased to constitute a lien on the mortgage property on 27th March, 1887, twenty years having then elapsed from the date of its creation, and there being no note of any payment on account, or written acknowledgment of the debt secured thereby, having been recorded upon the record of such mortgage (the original complaint for the foreclosure of said mortgage and *lis pendens* not having been filed until 15th March, 1888), under the provisions of the act of 1879, now section 1831 of the General Statutes. The section is as follows: "No mortgage or deed having the effect of a mortgage, no judgment, decree, or other lien on real estate shall constitute a lien upon any real estate after the lapse of twenty years from the date of the creation of the same: *Provided*, that if the holder of any such lien or liens aforesaid shall, at any time during the continuance of such lien, cause to be recorded upon the record of such mortgage, deed having the effect of a mortgage, or shall file with the record of such judgment, decree, or other lien, a note of some payment on ac-

count, or some written acknowledgment of the debt secured thereby, with the date of such payment or acknowledgment, such mortgage, deed having the effect of a mortgage, judgment, decree, or other lien, shall be and continue to be a lien for twenty years from the date of the record of any such payment on account, or acknowledgment: *Provided,* further, that nothing herein contained shall be construed to affect the duration of the liens of judgments as prescribed by section 310 of the Code of Procedure."

In the case of *Henry* v. *Henry* (31 S. C., 1), the Supreme Court of the State held in relation to the lien of a judgment, that this act was retroactive, but was nevertheless not unconstitutional. The court (Simpson, C. J., dissenting) held that the act must necessarily be implied to have a retroactive effect as to *judgments*, for it could not otherwise have any effect at all; for the only judgments which could be affected by it were those recovered prior to that act, and it would be wholly inoperative unless held to. be applicable to such judgments. The court held the act in that case not to be unconstitutional, because it does not impair the obligation of a contract or divest vested rights resting on contract or vested rights of property; but as only the alteration in a rule of evidence, not in any wise affecting any previously existing right. They considered the scope, purport, and object of the act, and what was the old law which the act was designed to amend. Under the old law, neither a judgment nor a mortgage after the lapse of twenty years constituted a lien, because of the presumption of payment, which, though susceptible of being rebutted by evidence, the nature and kind of the evidence was not distinctly defined, and the object and effect of the act was to declare what should be after the passage of the act the kind of evidence necessary to rebut the presumption of payment. They further held that, conceding that such legislation cannot be applied to a pre-existing contract, unless a reasonable time has been afforded the party affected thereby to conform to the requirements of the new law, there was nothing to prevent its application in that case, for the appellant had a reasonable time to conform to the new law, for the act was passed in 1879, upwards of

seven years before the expiration of the twenty years from the
entry of his judgment in 1867.

There are important differences between this case and the case
of Henry *v.* Henry. In that case the question was as to a *judgment ;* in this case it is as to a *mortgage.* A judgment is always
payable at its date, while a mortgage is always payable at a subsequent date. The act is not in express terms retroactive, but
the court held it was by necessary implication intended to be
retroactive as to *judgments,* because otherwise it would be wholly
inoperative, there being no judgments to which it could be applied, except to those existing before its passage. But there is
no such necessary implication as to *mortgages,* and the act can
be construed to apply only to the lien of mortgages created after
its passage. A judgment creates a lien only by operation of law,
and is not strictly a contract protected by the constitution (*In re*
Kennedy, 2 S. C., 226), but a mortgage is; and the duration of
its lien under the laws existing at the time of its creation is a
"right resting on contract," which would be affected and limited
if this act is held to be applicable to it.

In the case of Henry *v.* Henry, the court say, that under the
view of the case taken by them, "the important and interesting
question (as to which a good deal might be said), whether an act
limiting the duration of the lien of a judgment can be applied to
pre-existing judgments without a violation of the constitution,
does not arise." But that question is involved, if the act is applied to a pre-existing mortgage, as to which, as in this case,
there is no presumption of payment arising from the lapse of
twenty years. In this case the bond is dated 27 March, 1867 ;
the last instalment was payable on the 27th March, 1868 ; a payment on account was made on 7th April, 1868 ; when this action
for the foreclosure of the mortgage securing payment of the said
bond was commenced, 15th March, 1888, twenty years had not
elapsed from the date at which the last instalment was payable,
nor from the date of the payment on account, from which date
the presumption commenced. The mortgage sets out in full the
condition of the bond, showing the dates of payment, and the
mortgage was recorded. To adopt the language of the Court of
Errors in the case of *Wright* v. *Eaves* (10 Rich. Eq., 595),

"There is no doubt that the debt to secure which the mortgage was given remains. * * * As a general rule, the security (the mortgage) ought to be regarded as co-existent with the debt;" and in *Nichols* v. *Briggs* (18 S. C., 484), "the lien lasts as long as the debt."

Under the circumstances and facts of this case, it seems to me that there is in the act in question neither "an expressed purpose nor an unequivocal and unavoidable implication from the words of the statute, taken by themselves and in connection with the subject matter and occasion of the enactment, admitting of no reasonable doubt, but precluding all question as to such intention" (Endlich on Interpretation of Statutes, § 271), which makes the act retroactive in its application to mortgages; and that therefore it should not be so construed, and should not be held to apply in this case. For authorities in our State on this point see, among others, *Ex parte Graham* (13 Rich., 283), in which it was said, "that statutes are not to be construed retrospectively, or so as to have a retroactive effect, unless it shall clearly appear that it was so intended by the legislature; and not even then, if by such construction the act would divest vested rights." *Nichols* v. *Briggs*, 18 S. C., 481; *State* v. *Pinckney*, 22 S. C., 504. To hold that the act has such retroactive effect as to *mortgages* executed before its passage, would, I think, "affect a vested right resting in contract," by "limiting the duration of the lien of such mortgage" as fixed by the law at the time the contract was entered into, which would not be constitutional.

In the case of Henry *v.* Henry, the court held, "that the object of the act was not to limit the duration of such liens, but simply to declare (and it is noticeable that such was the word used in the title) what should be the evidence of such payment or new promise as would be sufficient to rebut the presumption of payment," and on this ground held it not to be unconstitutional. A *judgment* being payable at its date, the presumption of payment arises twenty years after its entry; but a *mortgage* secures a debt payable *after* its date, and the presumption of payment does not arise until twenty years after the date at which the debt is payable. But if this was "the object" of the act, how can the act

apply in a case like this, in which there is no presumption of payment to be rebutted?

Other arguments were urged by the solicitor for the plaintiff; but I think it unnecessary to go further into the argument, or to do more than state the conclusion at which I have arrived, that the plaintiff's mortgage constitutes the first lien, to be first paid out of the funds in my hands, and I so recommend.

*Second—The judgment of Joseph W. Harrisson.* The evidence herewith filed shows that this judgment was for the individual debt of Adam B. Glover, who died 28th May, 1867, and was entered up against Annie B. Glover, his widow and administratrix, on 16th July, 1869, for $177.81.

John H. Renneker, the survivor of Renneker & Glover, instituted proceedings in the Court of Common Pleas 18th March, 1868, to which the administratrix and heirs and distributees of Adam B. Glover were parties, for the settlement of the affairs of the partnership of Renneker & Glover. Under and in pursuance of a decree in said cause, filed 23rd January, 1871, William J. Gayer, special referee, conveyed a lot at the corner of Concord and Inspection streets, part of the partnership property, to Mrs. Annie B. Glover, widow of said Adam B. Glover, and their children, freed and discharged from all partnership debts; and the remaining real estate of the partnership, including the lot at the corner of King and Queen streets, mortgaged by Renneker & Glover to Amsinck & Co. (and which has been sold under the order in this case), to John H. Renneker, the surviving partner, subject to all partnership debts of Renneker & Glover.

I am of opinion that the lien of this judgment was transferred from the property conveyed to John H. Renneker, subject to the partnership debts, to the lot conveyed to Mrs. Annie B. Glover and children, freed and discharged from the partnership debts (*Riley* v. *Gaines,* 14 S. C., 457); and that this judgment creditor is not entitled to receive any part of the fund in my hands, and I so respectfully recommend.

*Third—The Estate of Hannah Enston.* The judgment recovered by Hannah Enston on 16th May, 1872, upon the bond of Renneker & Glover, did not, in my opinion, constitute a lien upon the lot, the proceeds of which are to be now apportioned.

Subsequently, on 12th May, 1877, Hannah Enston instituted proceedings in this court against John H. Renneker, survivor, to foreclose the mortgage of a lot on the west side of King street, given by Renneker & Glover to secure the same bond upon which the above mentioned judgment was recovered in 1872.   To this action Joseph W. Harrisson, as a judgment creditor, was a party. The mortgage property was sold, the proceeds applied to the debt, and on the 15th July, 1881, a judgment and money decree for the deficiency, viz., $4,714.68, with interest from 26th March, 1878, was entered and enrolled.

It has been contended before me that this decree for the deficiency, enrolled 15th July, 1881, is void because of the judgment upon the bond secured by the mortgage recovered in 1872, and the case of *Pilgram* v. *Anderson* (30 S. C., 499), is relied upon in support of the position.   In that case it was held that "a mortgagee cannot maintain an action at law on his debt while, at the same time, he is prosecuting an action in chancery for the foreclosure of his mortgage and for judgment for deficiency"— "the mortgagee should not be permitted to harrass his debtor by two suits at the same time, both tending to the same result." But the defendant, Renneker, who was a party to and filed an answer in the foreclosure suit, set up no such ground of objection, and it being a privilege of the debtor which should be pleaded (as it was in Pilgram *v.* Anderson), and which he waived, I do not see that it can be set up by a third person against the validity of the judgment and decree.   It was urged that the court was without jurisdiction to make the decree, but I do not consider that the case of Pilgram *v.* Anderson sustains that position.

I therefore consider that the money decree, enrolled on 15th July, 1881, constituted a valid lien upon the lot sold in this case, which was subsisting when this action was instituted (15th March, 1888), and would be entitled to receive any portion of the proceeds of the sale of said lot which might remain after the payment of the mortgage debt of the plaintiff, which I consider a prior lien, unless the claimant under the tax title is held to have prior claim.

*Fourth*—*T. W. Bacot, Assignee of John H. Renneker, Jr.* As before stated, the assignee, made a party defendant by order

in this case with leave to contest the claims of the judgment creditors, claims under a tax title. John H. Renneker (jr.) held under a conveyance from the City Council of Charleston, dated 10th January, 1882 (and by his assignment for benefit of creditors, dated 30th June, 1888, conveyed to T. W. Bacot, assignee). The City Council of Charleston held under deed from the Commissioners of the Sinking Fund of the State of South Carolina, dated 20th July, 1881. These two several deeds have been produced and proved, and are filed with the testimony.

The question, upon whom rested the burden of proof as to the validity of the tax title, was elaborately and ably argued; the solicitor for the judgment creditors contending that the claimant under the deed from the commissioners of the sinking fund must show the validity by proving that all the requirements of the tax laws were duly complied with, as held in the *State ex rel. Hagood* v. *Thompson* (18 S. C., 538); while the solicitor for the assignee contended that this rule is confined to contests between the holder of the tax title and the original owner, or one who claims under him, and that a judgment creditor whose claim is adverse to the original owner, has upon him the burden of proof that the tax title is invalid. I do not think it necessary in this case to make a ruling upon the point, because the evidence has been produced before me as to all the steps taken upon which the tax title rests, and it is not material by whom it was offered. If the evidence shows that all requirements of the law were complied with, the tax title is good; if that such requirements have not been complied with, the tax title is not good.

This report has been necessarily so long, that I must confine it, so far as relates to "the tax title," to such facts and conclusions of law as are sufficient, in my opinion, to decide the question of its validity, although the entire testimony offered on both sides is herewith filed. The lot covered by the tax title was charged with $13.56 for taxes (this apparently including costs and penalties) for the fiscal year commencing 1st November, 1877, in name of John H. Renneker. These taxes not having been paid, was advertised as "*delinquent*" by the county auditor for sale on 6th day of January, 1879. The advertisement was headed thus: "In accordance with instructions from the comptroller general, I

hereby publish the list of delinquent lands of Charleston County for the tax year 1877, as reported to me by the county treasurer." This advertisement was dated 26th December, 1878, and was published on 28th December, 1878, and on 4th January, 1879. The sale took place on 6th January, 1879, and the property, for want of bidders, was knocked down to the State.

The same property was advertised for sale as "forfeited land," the advertisement, being dated 20th August, 1879, was published on 21st August, 1879, and in accordance with said advertisement was offered for sale on 21st October, 1879, as "under sec. 3 of an act entitled An act to determine the manner of disposing of lands purchased by the State for taxes, approved 23rd September, 1868." At the time advertised the lot was offered for sale, and for want of bidders it was knocked down to the State, entered on the books of the county auditor, and was turned over to the sinking fund commission, 5th April, 1881.

Upon the legality and sufficiency of these several proceedings, anterior to. the conveyance by the commissioners of the sinking fund to the city council of Charleston (20th July, 1881), the validity of the tax title depends. The testimony shows that no execution or distress warrant to collect the tax from personal property was ever issued in this case, the reason assigned by the officials being that the owner of the lot, John H. Renneker, made no return of personal property for the fiscal year 1877, and that it was not customary to issue executions where there was real estate charged with the taxes and no return of personal property.

The laws governing the assessment and collection of taxes for the fiscal year 1877, by which this tax title must be tested, were "Revised Statutes" of 1872 (title 3, chap. 13); the general tax act of 1874 (15 Stat., 731), the act to amend the same (15 *Ibid.*, 979); act to raise supplies for the fiscal year 1877, approved 22nd March, 1878 (16 Stat., 549), and the act to amend the general tax law, approved 22nd March, 1878 (*Ibid.*, 559). The evidence further shows that the "delinquent land sale for the taxes of 1877 did not take place on the day fixed by statute, viz., first Monday in December, 1878, but on 6th January, 1879. Section 9 of the act of 22nd March, 1878, provides, "If any of the duties herein required to be performed on or before certain

31—34

days by any officers herein named, cannot for want of proper time or other causes, be so performed, the comptroller general, with the approval of the governor, may extend the time for the performance of the same," &c.

The testimony of W. G. Eason, county auditor, shows that "the sale of delinquent lands on 6th January, 1879, was in pursuance of instructions of the comptroller general, in a letter addressed to him, dated 18th December, 1878, as follows: 'In regard to delinquent lands, if you have not already done so, you had best proceed to give the notice of sale two weeks as required by law. Make the sale for a period not later than first Monday in January, or earlier if you can comply with the law.' Signed, Winthrop Williams, for comptroller general; written on official paper of the comptroller general's office. There is no endorsement on the paper by the governor. Mr. Eason further testifies that "Winthrop Williams is and was on 18th December, 1878, clerk of the comptroller general in charge of the tax department. I frequently received instructions from the comptroller general signed by him."

I am of opinion that the laws, under which the taxes for 1877 were levied, required the county treasurer to first endeavor to collect said taxes from personal property; and that, having failed to comply with this requirement of the law, the proceedings by which the property was offered for sale as delinquent lands were illegal and void, and the alleged forfeiture to the State was without authority.

It is conceded that the delinquent land sale for the taxes of 1877 did not take place on the day fixed by statute; but it is contended that the sale was nevertheless valid by reason of the order of the comptroller general to the county auditor before stated. Even assuming that the section of the act of 1878, before quoted, was applicable to the proceedings for the collection of the taxes of the fiscal year commencing 1st November, 1877, and that the approval of the governor is to be presumed in the absence of testimony on the subject (neither of which is admitted by the solicitor for the judgment creditors), I do not think that the comptroller general had the authority to order this sale after the time for the sale fixed by statute had passed. His authority was

only to extend the time for the performance of the duties of certain officers where they cannot be performed on the days required to be performed for want of proper time or other causes, and the direction to sell on a different day, given after the day fixed by law had passed, cannot, I think, be properly considered as an extension of the time, and therefore not authorized by the act. I think the auditor's duty, under the circumstances of the case, was to have carried forward the delinquent lands to the delinquent land list of the next fiscal year. A. A. 1868, § 112, 14 Stat., 60; A. A., 1874, § 105, 15 Stat., 769. See also *Roddy* v. *Purdy*, 10 S. C., 137, and *Dougherty* v. *Crawford*, 14 *Id.*, 629.

Several other grounds of objection to the validity of the tax title were urged by the solicitor for the judgment creditors: 1. That the requirements of the law in relation to the county board of equalization had not been complied with. 2. That the advertisement of the delinquent land sale was published on two successive weeks, less than fourteen days, and not for two weeks as required by law. 3. That the sale by the sinking fund commission to the city council was not made at auction. 4. That the conveyance by the commissioners of the sinking fund to the city of Charleston was signed by only three of the five commissioners. 5. That said deed was not under the great seal of the State.

Being of opinion that, for the reasons hereinbefore given, the property in question was never legally forfeited to the State, and that all the subsequent steps were therefore inoperative and the tax title void, it is not, I think, necessary to pass upon these objections; but that the solicitor presenting them may have the most convenient mode of bringing them to the attention of the court by exceptions to my report, I report that in my judgment none of the five grounds above stated is sufficient to make the tax title void.

I respectfully recommend that the balance in my hands subject to the order of the court, $1,627.01, be applied first to the payment of such costs of the action as determined by the court to be so payable, except the costs of the answers of the defendants, Joseph W. Harrisson and W. E. Butler, executor of Hannah Enston, to the original complaint, which are to be paid by

the plaintiff in accordance with the order giving leave to the plaintiff to amend the complaint, filed 10th September, 1888, and the costs of the defendant, John B. Glover, which are to be paid by the plaintiff in accordance with the order dismissing the complaint, as against the said John B. Glover, filed 10th September, 1888.

The amount due upon the bond secured by the mortgage with interest to date is $4,240.97, as appears by a statement herewith filed, and I respectfully recommend that the balance in my hands, after payment of costs, be paid to the plaintiff on account of said debt.     CH. RICHARDSON MILES,

7th March, 1890.     Master.

The Circuit decree was as follows:

These cases are before me on reports of the master and exceptions. Reports bear date 26 October, 1889, and 7 March, 1890.

The facts upon which the issues of law arise are so clearly stated in these reports, that I will not restate them here. The questions raised are as follows: 1. Whether the lien of plaintiff's mortgage is rendered invalid under the provisions of the *Act of 1879, Gen. Stat.*, § *1831*, the same having been executed 27 March, 1867, and given to secure a bond payable 6 and 9 and 12 months after date. 2. The validity of a judgment held by estate of Hannah Enston, being a judgment for a deficiency after the application of the proceeds of the sale of mortgaged property, there having been a previous judgment on the bond in an action on it alone. 3. The validity of a title set up by Thomas W. Bacot, the same having been derived under an alleged forfeiture for taxes, and conveyed by the commissioners of the sinking fund to the city of Charleston, and by the city to the said Thomas W. Bacot.

It is said in *Aultman, Taylor Co.* v. *Rush* (26 S. C., 526), that "a mortgage is the imposition of a lien on certain property therein mentioned, given to secure a contract, but is *something independent of the contract itself,* and is collateral thereto. It is a means consented to by which the contract to which it is collateral may be enforced." I will assume, however, that a mortgage is what is known as an executed contract, as distinguished

from an executory contract, and that the right which a mortgagee has over the land is a vested right founded on a contract, and will consider the act of 1879 from this standpoint. It seems to be well settled that, without impairing the obligation of a contract, the legislature may modify the statute which limits the time within which an action may be brought, either by extending or prescribing some shorter period, provided only that, where the statute applies to pre existing contracts, there shall be a reasonable time between the passage of the act and the time fixed for the bar of the action. *Cooley Const. Lim.*, 366; *Story Const.*, 1385; *Wardlaw* v. *Buzzard*, 15 S. C., 158.

The provision of the constitution of the United States, forbidding State laws impairing the obligation of contracts does not extend to all laws which are merely retrospective and which even impair vested rights. *Satterlee* v. *Matthewson*, 2 Peters, 378; *Charles River Bridge Co.* v. *Warren Bridge*, 11 *Id.*, 420–539. In *Miles* v. *King* (5 S. C., 146), it was held by the Supreme Court of this State, that a law which made void, as to subsequent creditors, a mortgage which had once been duly recorded, and was not recorded a second time where the records had been burnt, is not unconstitutional. In this case a requirement was imposed on a mortgagee whose rights had become once perfect as to all the world, as a condition of the continuance of his rights, and that condition was, as here, the making of a record. In that case the lien was to be void only as to certain persons, and here it is to be void as to all persons. There is no difference in principle, it is only in degree.

In the case of *King* v. *Belcher* (30 S. C., 381), the Supreme Court held that an act which was passed after the expiration of 10 years from the date of a judgment, and within the 3 years during which there was, by the law as it stood at the date of the judgment, a privilege of reviving the judgment, and by which all right of reviving the judgment was taken away, was unconstitutional as taking away *all* remedy, as there was no means by which, under the act, the lien could have been preserved. In *Henry* v. *Henry* (31 S. C., 1) the court held that the act of 1879, limiting the duration of liens and mortgages for 20 years from date, and where the 20 years had not expired at the pass-

age of the act, was valid as to the liens of antecedent judgments. There seemed to be no difference of opinion in the court as to the right of the legislature to pass such an act. The majority of the court held the act to be retrospective and valid, the Chief Justice dissenting mainly on the ground that the act was not retrospective, and not on the ground that there was no right to pass it.

Now, this act of 1879 has been held in *Henry v. Henry, supra,* to be retrospective as to judgments. The very same language has been used in the act in reference to the liens of mortgages as has been used in reference to judgments, and I do not see any reason why it should be held retrospective as to one and not the other.

The question then remains, can the legislature limit the time of the continuance of the lien of a mortgage by prescribing reasonable times as to notice of its continuance as prescribed in the act? Both liens grow out of contracts—the lien of the mortgage an immediate creation, and that of the judgment the necessary and legal consequence of a contract and failure to comply with its terms. It is a mistake to say that, as to either a mortgage or a judgment, the lien continued for only twenty years. The lien continued as long as the debt continued to be valid and collectible, and could have been kept in date by renewals, payments, or acknowledgments. In *Henry v. Henry, supra,* though the twenty years from the date of the judgment had passed, it had during the twenty years been frequently acknowledged to be due and unpaid, and there had been, under proper proceedings, an order made by consent, or without objection, to revive the judgment; and this was in a proceeding commenced after the expiration of twenty years from the date of the judgment, but while the presumption of payment had been rebutted by admissions, and even the defendant had consented to the revival of the judgment and the continuance of the lien. Yet under these circumstances the court held that the lien was void.

I do not clearly see how it can make any difference that in the mortgage in this case the debt secured was payable at 6, 9, and 12 months from the date of the mortgage, thus continuing the period at which the presumption of payment would arise for twenty-one years from the date of the mortgage. The action in

this case was commenced after the expiration of the twenty years, but before the expiration of twenty-one years. I do not appreciate the principle which would make the act of 1879 valid as to a judgment and not valid as to a mortgage. The mortgagee in the case now before me had, after the passage of the act. some eight years in which either to commence action on the mortgage for foreclosure, or to protect herself from the operation of the act by complying with its reasonable terms. The remedy given or allowed by act was ample, and if the lien has been lost, it was lost by the *laches* of the mortgagee. In *Nichols* v. *Briggs*, 18 S. C., 481, and *State* v. *Pinckney*, 22 *Id.*, 504, the question was not as to the validity of a retrospective act, but whether the acts construed were intended to be retrospective. In *Henry* v. *Henry*, *supra*, the question as to the validity of the lien of the judgment was raised by a third party, another judgment creditor, as has been done in this case, and as I think he had a right to do.

2. The judgment held by the estate of Hannah Enston may have been improperly rendered, and perhaps may have been set aside on appeal or on a motion in that cause. It cannot be attacked collaterally, as it is proposed to do here.

3. The title set up by Thomas W. Bacot I regard as invalid. This title is derived not under a deed by the auditor, but under a deed of the commissioners of the sinking fund, and to which the presumption of validity does not apply. If we assume that the extension of the time of sale by the clerk of the comptroller general is equivalent to the extension by the comptroller general himself, and that the comptroller general had, under the power to *extend* the time of sale, the right to *fix a new day of sale* after the time fixed by law had passed, still it nowhere appears that any extension of time was made with the approval of the governor. It might perhaps be assumed that the governor does his duty; but it cannot be assumed that he did any act which he had a right to do or not do in his discretion.

I therefore concur with the master in his findings of fact and law, as to the judgment set up by the estate of Hannah Enston and as to the title set up by Thomas W. Bacot to the mortgaged premises. I cannot, however, concur with the master as to the validity of the plaintiff's lien under her mortgage, and as to this

the report is overruled. It is therefore ordered and adjudged, that the report of the master be confirmed in all respects, except that the money in his hands in this case, or so much thereof as may be necessary, after the payment of the costs payable out of the same, be paid over to the judgment held by the estate of Hannah Enston, instead of the plaintiff's mortgage debt, and the balance, if any, be held subject to the order of the court.

Plaintiff appealed on the following grounds:

1. Because his honor erred in holding that a defendant judgment creditor of the original mortgagor had a right to question the validity of the lien of the mortgage on the ground on which it was herein questioned; on the contrary, he should have held that such a defendant could not avail himself of such a *"personal privilege."* And moreover, if such a defendant could otherwise avail himself of such a *"personal privilege,"* because his honor erred in holding that the defendant Butler, executor, had a judgment lien, and so had proved *strictly* that he was entitled to the protection of such *"personal privilege."*

2. Because his honor erred in holding as follows: "I cannot, however, concur with the master as to the validity of the plaintiff's lien under her mortgage, and as to this the report is overruled," and also in holding that "the remedy given or allowed by act was ample, and if the lien has been lost, it was lost by the *laches* of the mortgagee."

3. Because his honor erred in confirming the master's report, "except that the money in his hands in this case, or so much thereof as may be necessary, after the payment of the costs payable out of the same, be paid over to the judgment held by the estate of Hannah Enston, instead of the plaintiff's mortgage debt," &c.

T. W. Bacot, assignee, appealed, alleging error in the following findings:

I. That the money decree or judgment for deficiency in favor of Hannah Enston against John H. Renneker, survivor of Renneker & Glover, entered 15th July, 1881, is a valid and subsisting lien on the premises corner of King and Queen streets.

II. That the title set up by Bacot, assignee, is void, because

(*a*) No execution or distress warrant was issued against personalty prior to the delinquent land sale. (*b*) The delinquent land sale was not held on the day fixed by statute, the comptroller general having no authority after that day had passed to appoint another day for such delinquent land sale.

And because his honor further erred in holding: 1. That this is a collateral attack upon the judgment held by Hannah Enston, whereas the record shows that Bacot, assignee, was authorized by order of court upon petition to attack said judgment. 2. That the burden of sustaining and establishing the tax title was upon Bacot, assignee, whereas his honor should have held that, this being a conflict between the holder of the tax title and a judgment creditor of the original owner, the burden of proof was upon the judgment creditor. 3. That it cannot be assumed that the governor did or did not do an act which it was in his discretion to do, whereas he should have held that, the burden of proof being upon the judgment creditor, it was incumbent upon her to show that the governor did not consent and assent to the order of the comptroller general extending the time for the delinquent land sale.

*Mr. T. W. Bacot*, for plaintiff.

*Mr. L. deB. McCrady*, for claimants under tax title.

*Mr. J. F. Ficken*, for judgment creditors.

September 19, 1891.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   The full and clear statement of the facts in this case by Mr. Miles, the master, in his two reports, which should be embraced in the report of the case, relieves us of the necessity of going into any detailed statement of the facts, and we will therefore confine ourselves to a consideration of the questions raised by this appeal, calling attention to such facts only as are necessary to a proper understanding of the points now involved.

The general question involved is as to the priority of the liens or claims of the several parties upon a certain lot in the city of

Charleston, or rather the proceeds of the sale thereof in the hands of the master. The plaintiff claims the first lien under a mortgage executed on the 27th of March, 1867, given to secure the payment of a bond of like date, payable in three instalments, at six, nine, and twelve months from the date thereof, upon which a payment was endorsed on the 7th of April, 1868. This mortgage was duly recorded, and is now held by the plaintiff under successive assignments from the original mortgagees and their assignee, the first bearing date 6th January, 1882, and the second 9th of January, 1882. The defendant. William E. Butler, as executor of Hannah Enston, denying the lien of the said mortgage, claims the first lien under two judgments recovered by said Hannah against the mortgagor, one entered 16th of May, 1872, and the other 15th of July, 1881. The defendant, T. W. Bacot, as assignee as aforesaid, recognizing the priority of the plaintiff's mortgage, claims under a tax title derived, as he alleges, through regular proceedings to sell the property for the non-payment of taxes assessed thereon for the fiscal year 1877, which being subsequent to the lien of the mortgage, its precedence must be acquiesced in, but being prior to the entry of the second judgment recovered by Mrs. Enston (it being conceded that the first judgment never had a lien), the tax title takes precedence of the judgment.

The validity of the lien of the mortgage is assailed upon the ground that more than twenty years having elapsed after its date before this action was commenced (15th of March, 1888) to foreclose this mortgage, and neither the original mortgagees nor the assignees having caused "to be recorded upon the record of such mortgage * * * a note of some payment on account, or some written acknowledgment of the debt secured thereby," the lien had expired under the provisions of the act of 1879, now incorporated in the General Statutes as section 1831. It is claimed, however, on behalf of the plaintiff, that the requirement of this statute, that some note of payment on account or written acknowledgment of the debt, should be recorded upon the record of the mortgage, was substantially complied with, by the recording of the assignment from the original mortgagees to Renneker, the intermediate holder, upon the record of the

mortgage before the expiration of the twenty years from the date of the mortgage. But we cannot accept that view. That assignment was certainly neither a note of payment nor a written acknowledgment of the debt. It was the act of the assignee merely, and, so far as appears, the mortgagor knew nothing about it, while the statute manifestly contemplates that the record of the mortgage should show some act of the mortgagor recognizing the continual validity of the mortgage.

Assuming, then, as we must assume, that this provision of the statute was not complied with, the real question is, whether this statute was intended to apply to mortgages executed prior to the enactment of that law ; and if so, whether it was competent for the legislature to pass such an act. This is a very important question, and far reaching in its effects ; for, as was suggested in the argument for plaintiff, if the view taken by the Circuit Court should prevail, then it would be possible, and perhaps not improbable, that a mortgage might lose its lien before any right of action to enforce it could arise. If a mortgage debt should be made payable more than twenty years after the date of the mortgage, as is known to be the case with mortgages on railroads, then the lien would be lost before any right of action could arise, unless, perhaps, there had been default in the payment of interest in the meantime.

Our first inquiry is, whether the legislature intended this statute to have a retroactive operation, so far as mortgages are concerned. The rule that a statute will never be given such a construction unless it is required by the express words of the statute, or must necessarily be implied from such words, is too well settled to need the citation of any authority to support it. Now, it is quite certain that there are no express words in the statute evidencing an intention that it should be retroactive, and we are unable to discover anything in the language used necessarily implying such an intention, so far as mortgages are concerned. It is true that in the case of *Henry* v. *Henry* (31 S. C., 1), it was held that such an intention was necessarily implied, so far as judgments were concerned ; but that was solely because it was absolutely necessary to give the act such a construction as to judgments, as otherwise the act would have

been entirely nugatory in that respect. For the legislature manifestly intended to make some alteration in the previously existing law as to the lien of judgments by the statute in question, and as the second proviso expressly forbids its application to the lien of judgments recovered since the adoption of the Code, by the express declaration "that *nothing* herein contained shall be construed to *affect* the *duration* of the liens of judgments as prescribed by section 310 of the Code of Procedure," it was absolutely necessary, in order to give the statute, so far as judgments were concerned, any effect at all, to apply its provisions to antecedent judgments. But no such necessity arises in the case of mortgages, and therefore there is no warrant for giving the statute a retroactive operation as to them.

At first view it may seem inconsistent to give a section of a statute a retroactive operation as to one of the subjects mentioned therein, and deny a similar operation as to another subject mentioned in the same section. But the inconsistency is seeming rather than real. There can be no doubt that it is entirely competent for the court to declare one portion of a statute unconstitutional, and at the same time recognize the constitutionality of that portion of the same statute which does not conflict with any constitutional provision. *Wardlaw* v. *Buzzard*, 15 Rich., 158; *State* v. *Carew*, 13 Rich., 498. So also a statute which in general terms refers to all contracts, may be declared unconstitutional as to certain contracts, while its constitutionality as to other contracts may be recognized. *Barry* v. *Iseman*, 14 Rich., 129, heard by the Court of Errors in connection with *State* v. *Carew*, *supra*. In *State* v. *Platt* (2 S. C., 150), it was held that one portion of a section of an act might be declared unconstitutional, while another portion of the same section may be held free from all constitutional objection; and the same doctrine was recognized, though the point was not distinctly decided, in *State* v. *Hagood*, 13 S. C., at page 56. The test, according to these two cases last cited, seems to be whether the unconstitutional provision relates to an independent matter which can be separated from the rest of the section without impairing its efficiency or altering its terms, whether the portion declared unconstitutional was capable of being the subject of a separate, independent act.

In this connection, a remark made by Dawkins, J., in delivering the opinion of the court in *Wardlaw* v. *Buzzard, supra.* seems quite pertinent: "It was not contended seriously that if one part of an act was unconstitutional, it vitiated the whole, *or that the same section might not be unconstitutional as affecting any* (? one) *class of cases, and constitutional as to others*" (italics ours).

Upon the same principle we see no reason why one portion of a section of a statute dealing with one subject may not be declared retroactive, from the necessity of the case, while another portion of the same section dealing with a distinct and different subject, as to which no such necessity arises, may not be construed as prospective only. It is manifest that this section was dealing with two entirely distinct and different subjects, either one of which might have been omitted or obliterated without in any way affecting the efficiency of the provisions of the statute as to the other. Either might have been made the subject of a separate act. There was no such connection between them as required that the statute should be construed alike as to both. For example, there was nothing to prevent the statute from being construed constitutional as to judgments, and unconstitutional as to mortgages, or *vice versa.* And so we think there is nothing to prevent the statute from being construed retrospective as to judgments, especially when such a construction is demanded by the necessity of the case, and prospective as to mortgages, where no such necessity exists. It seems to us, therefore, that the act of 1879, now incorporated in the General Statutes as section 1831, cannot be construed as applying to a mortgage executed anterior to the date of that act, and that the Circuit Judge erred in holding otherwise.

Under this view, the question whether it was competent for the general assembly to pass such an act giving to it a retroactive operation, cannot arise and will not be considered; for it is a delicate matter for the court to declare an act of the legislature void for unconstitutionality, and it should not be done unless necessary to the decision of a case. We therefore must decline to express or even intimate any opinion upon this grave question. Having reached this conclusion, the other questions raised are practically of no importance, for it is mani-

fest that the fund in controversy will not be sufficient to satisfy the mortgage debt, which we hold is the first lien thereon. But as these questions have been made and may be regarded as important, we will proceed to dispose of them.

First, as to the Enston judgment. It seems that the debt upon which this judgment was recovered, was evidenced by a bond secured by a mortgage on property other than that now in question, and that an ordinary action at law on the bond was brought, which culminated in a judgment entered 16th of May, 1872, which, under the provisions of the Code, had no lien, and no steps appear to have been taken to give it a lien. Subsequently, however, Mrs. Enston commenced proceedings to foreclose the mortgage, which resulted in a judgment of foreclosure, under which the mortgaged premises were sold, and after applying the proceeds of sale to the mortgage debt, there remained a balance due thereon, and a judgment for the deficiency was entered 15th of July, 1881. It being conceded that the judgment on the bond, obtained in the action at law and entered 16th of May, 1872, never had a lien, the only question is as to the validity of the judgment obtained in the proceedings to foreclose the mortgage, for the balance left unpaid by the proceeds of the sale of the mortgaged premises, which was entered 15th of July, 1881, after the lien for the unpaid taxes of 1877 had been fixed upon the property, as claimed by the holder of the tax title.

It is contended that the judgment of 15th of July, 1881, was void, because Mrs. Enston, the plaintiff in that judgment, had previously obtained a judgment for the same debt in the action at law on the bond, and the case of *Anderson* v. *Pilgram* (30 S. C., 499), is relied on to sustain this proposition. All that case holds is that a mortgagee cannot maintain an action at law on his debt, while at the same time he is prosecuting an action in chancery, for the foreclosure of his mortgage and claiming judgment for any deficiency that may arise from the insufficiency of the proceeds of the sale of the mortgaged premises to pay the mortgage debt. But the pendency of another action, or the previous recovery of judgment, for the same debt, is a defence which must be pleaded and proved like any other defence; and if it is not so

pleaded and proved, there is nothing to prevent the court from rendering judgment in the second action. If one is sued upon a note to which his name has been forged, or which has been paid, and he fails to set up and prove the forgery or payment, whereby judgment is recovered against him, neither he nor any one else can afterwards assail such judgment upon the ground that the note was forged or had been paid. *Fraser & Dill* v. *City Council of Charleston*, 19 S. C., 384. It is not, as seems to be supposed, a matter of jurisdiction, and there is nothing in the case of *Anderson* v. *Pilgram, supra*, to warrant such an idea. It is a mere matter of defence, and if not pleaded and proved at the proper time, it cannot be urged afterwards, either by the defendant in the case or any one else, for the judgment is conclusive. Even, therefore, if it should be conceded (as to which, however, we express no opinion) that the mortgagor could have successfully defended himself in the action for foreclosure, from a judgment for the deficiency, yet not having done so when he had the opportunity, he cannot do so now, as he is concluded by the judgment, which became a valid lien from the date of its entry as to him as well as all others.

It only remains to consider the question as to the tax title. It being conceded that no execution or distress warrant had ever been issued to enforce payment of the taxes in arrear out of the personal property of the tax-payer, we think the question is concluded by our decision in *Ebaugh* v. *Mullinax, ante* 361, and we refer to that case for the reasons upon which we rest our conclusion. It is true that in that case the question arose out of the failure to pay the taxes for the year 1880, while here the taxes in arrear were those for the year 1877; but as it is conceded that the terms of the two acts under which the taxes for those two years were levied are identical, so far as this matter is concerned, the reasoning in that case is applicable here. Without considering any of the other alleged defects in the tax title, we think the failure to issue the execution against personal property was fatal.

The judgment of this court is, that the judgment of the Circuit Court, in so far as it adjudges that the lien of the plaintiff's mortgage has been destroyed by the act of 1879, be reversed,

but that in all other respects it be affirmed, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary.