### DICK v. SCARBOROUGH.

1. CONSTITUTION—CITIES AND TOWNS—ELECTIONS.—Where the Constitution confers on municipalities several powers to be exercised upon majority vote of the citizens, the Legislature in providing for such election cannot limit the use of the election machinery to deny one of these constitutional rights while giving opportunity for the exercise of the other.

2. CITIES AND TOWNS—WATER WORKS.—CIVIL CODE 1902, sec. 2021, construed to confer on municipalities the power to vote bonds for *purchase* of water works plant.

3. IBID.—MUNICIPAL BONDS—ELECTION BALLOTS.—Any form of ballot connected with previous notice which gives the voter full knowledge of the issue involved is sufficient in a municipal election upon issuing bonds.

Petition for writ of mandamus in the original jurisdiction of this Court by George W. Dick, as mayor, R. T. Haynsworth *et al.,* as aldermen, constituting the city council of the city of Sumter, against R. Lee Scarborough, chairman, *et al.,* commissioners of public works of city of Sumter.

*Messrs. Haynsworth & Haynsworth,* for petitioners.

*Messrs. Fraser & Cooper,* contra.

·December 20, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this proceeding, the city council of the city of Sumter asks for a writ of mandamus to compel the commissioners of public works to sell certain municipal bonds, aggregating in amount one hundred and sixteen thousand ($116,000) dollars, turned over to them by the city council, and to use the proceeds in the purchase, under an .option held by the city, of the water works now owned and operated by the Sumter Water Power Company. The answer admits all the facts set out in the petition, but alleges that "The bonds are invalid, unsaleable and void, because, (a) The bonds were issued for the purchase of water works already constructed, and under the statute a city in South Carolina has no power to purchase water works already constructed. (b) Because the question voted upon in the election was as follows: 'Shall the city of Sumter purchase the property and right of the Sumter Water Power Company and issue bonds in payment thereof in such amount as may be necessary?' 'Yes.'" The negative ballots, it is alleged, were in precisely the same words, "No" being substituted for "Yes." "Whereas, it is respectfully submitted, that the definite amount of bonds to be issued should also have been submitted to the voters voting in said election."

The first objection to the validity of the election raises a serious question of constitutional and statutory construction. It is provided by sec. 5, art. VIII., of the Constitution:

"Sec. 5. Cities and towns may acquire, by construction or purchase, and may operate water works systems and plants for furnishing lights, and may furnish water and lights to individuals, firms and private corporations for reasonable compensation: *Provided*, That no such construction or purchase shall be made except upon a majority vote of the electors in said cities or towns who are entitled to vote on the bonded indebtedness of said cities or towns."

This article of the Constitution expressly conferring the power to issue bonds for the purchase of "water works systems" * * * "upon a majority vote of the electors," necessarily implies the power of the municipality to hold an election to ascertain the will of the majority, though possibly this might have been defeated by the failure of the General Assembly to provide election machinery.

Sec. 7, art. VIII., contains this provision: "Sec. 7. No city or town in this State shall hereafter incur any bonded debt which, including existing bonded indebtedness, shall exceed eight per centum of the assessed value of the taxable property therein, and no such debt shall be created without submitting the question as to the creation thereof to the qualified electors of such city or town, as provided in this Constitution for such special elections; and unless a majority of such electors voting on the question shall be in favor of creating such further bonded debt, none shall be created."

The provision for "such special elections" here referred to is found in sec. 13, of art. II., which is as follows: "Sec. 13. In authorizing a special election in any incorporated city or town in this State for the purpose of bonding the same, the General Assembly shall prescribe as a condition precedent to the holding of said election a petition from a majority of the freeholders of said city or town, as shown by its tax books, and at such elections all electors of such city or town who are duly qualified for voting under section 12 of this article, and who have paid all taxes, State, county and municipal, for the previous year, shall be allowed to vote; and the vote of the majority of those voting in said election shall be necessary to authorize the issue of said bonds."

In pursuance of these articles of the Constitution, the General Assembly enacted a general law on the subject (Civil Code, sec. 2008), providing for elections to be held, "in accordance with the laws of force governing municipal elections," and prescribing as a condition precedent to the holding of the election, the filing of the petition described in the Constitution. Either by inadvertence or design, how-

ever, this statute while providing for the issuance of bonds, sanctioned by an election, for the *construction* of water works, omits all reference to bonds for the *purchase* of water works. The case, therefore stands thus: The Constitution conferred upon municipalities the right to acquire by construction or purchase, water works systems, and to issue bonds therefor, under the sanction of an election. In enacting the general law for holding such elections, it was not within the power of the General Assembly to so limit the use of the election machinery provided as to deny one of these constitutional rights while giving opportunity for the exercise of the other, which was linked with it and stood on precisely the same footing. When the machinery is provided and the pre-requisites of the election are laid down by the General Assembly under the mandate of the Constitution, all rights to which they were intended by the Constitution to give effect may be exercised under them, whether expressly mentioned in the statute or not.

But aside from this, sec. 2021 of the Civil Code, provides: "It shall be the duty of the municipal authorities of any incorporated city or town of this State, upon a petition of a majority of the freeholders of said city or town, as shown by its tax books, to order a special election in any such city or town, for the purpose of issuing bonds for the purchasing, repairing or improving of city or town hall, or park or grounds therefor, markets and guard house, enlarging, extending or establishing electric light plants or other lights, or water works, or sewerage, erecting, repairing or altering school buildings, fire protection purposes, improvement of streets and sidewalks, or any corporate purpose set forth in said petition."

It is true, power to hold an election to authorize the issuance of bonds to purchase water works is not given in this statute by use of the word *purchase,* but "establishing" municipal water works may be accomplished by purchase as well as by construction. Establishing water works obviously here means the acquirement and inauguration of a system of

water works as a municipal enterprise and as municipal property by either construction or purchase. Besides, the words, "or any other corporate purpose," used in this statute, manifestly includes the purchase of water works a corporate municipal purpose authorized by the Constitution.

The facts of this case do not warrant the Court in sustaining the objection to the form of the ballot. Without doubt, it is safer in such elections to have the ballot express the precise amount to which it is proposed to issue bonds, for then there can be no doubt of the voter having fair notice of the import of his vote. But there is no statutory provision as to the form of the ballot, and the most that the Court can require in this respect is that the voter should have reasonable notice of the election and the issue it involved. In this case the ballot expressed that the issue was, whether the city should purchase the Sumter Water Works and issue bonds for the purchase money. The record shows the purchase price agreed on by the city council before the election was "$116,511.65, with certain small contingent additions for experimental boring of additional wells, and that this was published officially and was otherwise known to the qualified electors and the freeholders of the city of Sumter." It thus appears that the municipal voters with full knowledge, by the election gave their assent to a bond issue exceeding $116,000, which is the aggregate of the bonds actually signed and now in the hands of commissioners of public works. The bonds, therefore, cannot be held invalid on the ground that the ballots did not give notice to the voters of the issue involved in the election. Under the facts of this case the ballots were sufficient.

It is, therefore, ordered and adjudged, that a writ of mandamus do issue, requiring the commissioners of public works of the city of Sumter to sell the bonds turned over to them by the city of Sumter and make the purchase of the water works, sanctioned by the election hereinbefore referred to.