## 11136

### SULLIVAN v. CITY COUNCIL OF CHARLESTON
### SMITH v. CITY COUNCIL OF CHARLESTON

(116 S. E., 104)

1. MUNICIPAL CORPORATIONS—OBJECTIONS TO PETITION FOR BOND ELECTION WAIVED BY FAILURE TO MAKE TIMELY PROTEST.—Objections that a petition filed with the city clerk praying for an election on the question of issuing bonds for street, sidewalk, and drain improvements as authorized by the 1919 amendment to Const. Art. 10, § 14a (Act Feb. 15, 1919 [31 St. at Large, p. 25], and Act March 10, 1922 (32 St. at Large, p. 1346), was not signed by a majority of the freeholders of the city, were waived by failure of taxpayers to file written protest or take proper proceedings in Court after the election has been ordered and proper notice thereof given, and prior to the holding of the election.

2. MUNICIPAL CORPORATIONS—TRIVIAL EXCESS IN ASSESSMENT INEFFECTIVE TO VOID ENTIRE BOND ISSUE TO PAY FOR IMPROVEMENTS.—Objections that a bond issue was invalid because the assessments for street improvements were excessive were not sustained by showing an excessive assessment of $160.22, where the total of assessments was $193,086.31; the discrepancy being too small to invalidate the entire issue.

3. Municipal Corporations—Bond Election Not Invalid Because Submission Did Not State Amount of Bonds, Where Voters Understood Question Involved.—Where the City of Charleston, proceeding under ordinance authorized by Act March 10, 1922 (32 St. at Large, p. 1346), and amendment of 1919 to Const. Art 10, § 14a (Act Feb. 15, 1919 [31 St. at Large, p. 25]), held an election to submit the issue of bonds for street, sidewalk, and drain improvements, to be assessed against the abutting owners, the proposition submitted was not void for indefiniteness in that it did not state the exact amount nor the maximum amount of bonds to be issued, since such amount, corresponding to the amount of the assessments, could only be determined in the future, and the voters had reasonable notice of the election and the issue involved, and the plan was plain, easily understood, and susceptible of definite ascertainment.

4. Municipal Corporations—Constitutional Requirement That Proceeds of Assessments Be Devoted Solely to Street Improvements Did Not Invalidate Assessments for Interest and Sinking Fund.—The 1921 amendment to Const. Art. 8, § 7 (Act Feb. 24, 1921 [32 St. at Large, p. 69]), providing that its limitations and those of Const. Art. 10, § 5, should not apply to the City of Charleston's bonded indebtedness nor to its certificates of indebtedness, the proceeds of which were solely applied to street, sidewalk, and drain improvements, did not by implication prohibit the levy by ordinance of a tax for interest and sinking fund for bonds voted under Act March 10, 1922 (32 St. at Large, p. 1346), and 1919 amendment to Const. Art. 10, § 14a (Act Feb. 15, 1919 [31 St. at Large, p. 25]), for such improvements, since the only effect of such restriction would be to insure the revenue from being diverted to other purposes, thus rendering the bonds a more attractive investment.

5. Statutes—Title Providing Assessment Against Abutting Property Owners Not Bad Where Act Provides Assessment Against Abutting Property.—The title of Act March 10, 1922 (32 St. at Large, p. 1346), providing for an assessment of "abutting property owners" is not bad as not conforming to the body of the Act, which provided an assessment against "abutting property"; such terms being used in the body of the Act interchangeably.

6. Municipal Corporations—Assessments May Be Levied for Past Benefits Unless Prohibited by Constitution or Statute.—A subsequent assessment may be levied because of a past benefit conferred by former city action in front of the lots assessed, if so provided by Constitutional and Statutory enactments, the only question being, not whether the Statue should be given a retrospective effect, but whether it was intended to have a present application to improvements theretofore installed.

7. MUNICIPAL CORPORATIONS—CITY WITHOUT AUTHORITY TO INCLUDE PAST BENEFITS IN ASSESSMENT FOR DRAINS WHERE UNAUTHORIZED BY CONSTITUTION.—Under the 1919 amendment to Const. Art. 10, § 14a (Act Feb. 15, 1919 [31 St. at Large, p. 25]), authorizing the Charleston City Council to levy on abutting property assessments for improvements to streets "proposed to be improved or where curbing is to be placed or drains laid, the City Council had no authority to include in the assessment benefits to a property owner from an adequate drain theretofore installed, notwithstanding Act March 10, 1922 (32 St. at Large, p. 1346), was broad enough to warrant such inclusion, since the Statute is limited by the amendment, which is the source of authority.

8. APPEAL AND ERROR—RULING THAT PLAINTIFF WOULD NOT BE ESTOPPED BY FAILURE TO PROTEST ELECTION IF ASSESSMENT WERE UNCONSTITUTIONAL, NOT APPEALED FROM, NOT REVIEWED, WHERE ON APPEAL ASSESSMENT IS HELD UNAUTHORIZED BY CONSTITUTION.—In a taxpayer's action to avoid an assessment, excessive for including past benefits, where the trial Judge in holding the taxpayer estopped for failure to protest before holding of bond election, and dismissing the suit, ruled that such estoppel would not be operative if the assessment was unconstitutional, and there was no appeal by the City Council from such ruling, and the ruling on appeal was that the assessment was unauthorized, the ruling as to estoppel will not be reviewed.

Before WILSON, J., Charleston, October, 1922. Affirmed as to Sullivan case; reversed as to Smith case.

Suits for injunction against the City Council of Charleston by Lucy C. Sullivan to restrain the issuance of bonds, and by Henry A. M. Smith to restrain collection of a drain assessment. The cases were heard together, and, from the judgment dismissing the complaints and refusing the injunctions, the plaintiffs appeal.

The decree of Judge Wilson in the trial Court follows:

The above two cases were heard by me, and, as the objections raised in Subdivision 2 of Allegation 5 of the Sullivan suit involves the question raised in the Smith suit, it was agreed by counsel that the cases should be heard together and decided at the same time.

It was admitted in both cases that the citations from the Constitution, Acts of the General Assembly, and Ordinances

of City Council set forth in the respective pleadings were correctly set forth; that notices of the proposed improvements of Meeting Street, on which the property involved is situate, was given by City Council by publication in the official journal of the city four times within 15 days, and, the contract for such improvements having been made by City Council, an assessment roll was filed with City Treasurer showing the assessment against, among others, the property owned by each plaintiff herein; that notice was published by City Treasurer in the journal of City Council that such assessment roll was in his office and would remain there for one week from the date of the publication, and that all persons concerned could within that time file objections or exceptions thereto; that no objections were filed during that week; that thereafter City Council confirmed said assessments, and the same were entered in the Assessment Liens Book kept by City Treasurer; that publication of the ordinance of City Council ratified April 18, 1922, referred to in the pleadings, was made in the official journal of City Council on April 20, 1922; that no attack upon said assessments was made by either of the plaintiffs within ten days after the confirmation of the assessments; that City Council had by ordinance declared that, as appears by Assessment Liens Book of the City of Charleston, there was outstanding and unpaid on the assessments levied against abutting property to meet the costs of permanent improvements on streets, the intersections of streets and sidewalks, and for curbing of streets and drains in the City of Charleston, the sum of $193,086.31, and directed the issuance of $193,000.00 of bonds of the City of Charleston, and directed the application of the proceeds of said assessments, when collected, solely to the payment of said bonds; that said bonds have never been actually issued and are still in the hands of the City Council.

It was further admitted that the statements of the plaintiff Henry A. M. Smith as to his business engagements and his

correspondence with city council and assessment notices as received, all of which are set forth in his reply, are correct.

It was further admitted that the assessment roll as filed with City Treasurer covering the assessment against the property of plaintiff, Henry A. M. Smith, had the following entries: 26–24 Meeting Street roadway, $236.60; proportion of intersections, $8.37; 12-inch drain, $246.53; curb, $59.62.

It was further admitted that at the time of the improvement of the roadway on which premises 26–24 Meeting Street abuts no new drain was laid, but that an old drain in excess of 12 inches which had been laid by City Council about the year 1854, and paid for at that time out of the general funds of the City, was in said street and allowed to remain there, and that the item in the assessment roll, "12-inch drain, $246.53," represented the assessment which could have been made, if the cost were really so much, against said property, if a new 12-inch drain had been laid at the time of paving the roadway.

The suit of Lucy C. Sullivan is for an injunction restraining the issuance of the bonds, and the suit of Henry A. M. Smith is for an injunction restraining City Council from claiming any lien upon his property by reason of the assessment of $246.53 for drains and from collecting the same. I will consider the objections Nos. 1, 3, 4, and 5 in the Sullivan suit, and will then consider objection 2 and the Smith complaint together, as the questions involved in the last two matters involve practically the same construction of the issues and law involved.

Objection 1. That the petition filed with City Council of Charleston on which the election was ordered and held was not signed by a majority of the freeholders of the City of Charleston.

Both the Constitution and Acts under which these bonds are sought to be issued require as a condition precedent to the calling of an election that a petition be presented to City

Council signed by a majority of the freeholders of the City as appears by its tax books. A petition purporting to be signed by such majority was presented to City Council, and City Council declared that such petition contained such majority, and accordingly ordered and held an election based on such petition. Sullivan, a taxpayer, who will be charged with the payment of a tax levied or to be levied to pay such bonds, now comes into Court and asks that the issuance of the bonds be enjoined because the petition did not contain the requisite signatures. This taxpayer was notified by the published notice of election that such election was ordered upon the petition, and knew, or should have known, that it could not have been ordered unless the petition contained the names of the majority of the freeholders of the City of Charleston. She did not attempt by Court proceedings, or otherwise, to prevent the holding of the election, but remained quiet, and it was only when the bonds were about to be issued in pursuance of said election, was her voice raised in protest.

This matter is the most serious one involved in the issuance of bonds where a petition of freeholders is required as a condition precedent to the holding of an election thereon. If the declaration of the governing body, whether Town or City Council, or school trustees, which or who are charged with the investigation as to the sufficiency of the petition is not incontrovertible, then, unless the doctrine of waiver and estoppel is effective, no bonds issued thereunder would ever be free from attack. A taxpayer could raise the question years after the bonds were issued, and if he could prove a defective petition, although the declaration of the governing body had asserted its sufficiency, the bonds could be declared invalid. Our Supreme Court has never directly rendered an opinion on this question, and I, therefore, in the absence of such decision, lay down the following rule:

Where the Constitution or Statutes of the State of South Carolina requires as a condition precedent to the holding of

an election on the issuance of bonds that a petition should
be presented to Town or City Council, or to school trustees,
as the case may be, signed by a majority or other propor-
tion of a designated class, and such governing body has de-
clared that such constitutional or statutory requirement has
been complied with, and thereupon orders and holds such
election after notice thereof pursuant to said petition, all
persons who would have had the right to object to the hold-
ing of said election, on the ground that such petition was
insufficient, shall be deemed to have waived such objection
and are estopped from contesting the sufficiency of such pe-
tition, unless prior to the holding of such election they shall
have filed a written protest with the governing body, or taken
proper proceedings in Court to contest the same.

The plaintiff, Sullivan, having failed to bring herself
within this rule, is estopped from now setting up this ob-
jection.   This objection is, therefore, overruled.

Objection 3.   That the proposition submitted at the elec-
tion on the question of the issuance of bonds was void for in-
definiteness, in that neither an exact amount nor a maximum
amount of bonds to be issued was stated in said proposition.

Under the proposed scheme of paving the City of Charles-
ton and assessing abutting property to meet the cost thereof,
it necessarily follows that the cost of such paving, which
would extend over a period of years, could not be ascer-
tained in advance.   The City Council of Charleston had the
right upon an election held to issue bonds or certificates of
indebtedness from time to time, representing the amount due
on deferred and unpaid assessments against abutting prop-
erty to raise the money to pay for the improvements; conse-
quently the amount of the bonds to be issued could not be
determined and would depend on the extent of the street
improvements made.

The freeholders in their petition for the election requested
an election on the issuing of bonds or certificates of indebt-
edness to be issued from time to time in such amounts as

shall appear necessary to the City Council of Charleston for the placing of permanent improvements on streets, etc., leaving the amount of the bonds to be determined by the necessity from time to time for raising money to meet the costs of the street improvements; and the voters at the election voting on this question gave their assent to the issuance from time to time of such amount of bonds as may be necessary for the above purpose. Therefore, it was impossible for a definite amount to be voted on or a maximum amount to be fixed, as, if the amount fixed proved insufficient, the result would have been a curtailment of improvements, which would have been against the purport and intention of the petition and election. It is true that a voter should know the amount of bonds on which he is voting, but where, from the very nature of the purposes for which the bonds are to be issued, it is impossible to ascertain the amount, the voter, by voting in favor of such indefinite amount, acquiesces in the discretion vested in City Council as to the amount to be issued. In the present case the issue is limited by the cost of the street improvements and bonds only to the amount of the assessments for such improvements can be issued. The freeholder (taxpayer) and voter were content with this protection.

In *Dick v. Scarborough,* 73 S. C., at page 154; 53 S. E., at page 87, the Court says: "The most that the Court can require in this respect is that the voter should have reasonable notice of the election and the issue it involved." There is no doubt in this case that the voter had such notice.

The third objection is, therefore, overruled.

Objection 4. That, inasmuch as the amendment to Section 7, Art. 8, of the Constitution ratified February 24, 1921, required the entire revenue from assessments against abutting property to be devoted solely and exclusively to the payment of bonds issued against such assessments, it by inference prohibited the levying of an annual tax upon all taxable property in the City of Charleston to pay the in-

terest on, and create a sinking fund for the payment at maturity of the bonds so issued.

I can see no merit in this objection.   Under the Constitution and laws of the State of South Carolina, City Council of Charleston has the right to issue bonds for street improvements and pledge the full faith and credit of the City for the payment thereof, provided the limitations of Article 8, § 7, and Article 10, § 5 of the Constitution are not exceeded.

The amendment ratified February 24, 1921 (Acts 1921, p. 69), removed these limitations, provided that the revenue arising from assessments levied against abutting property are applied solely to the payment of bonds issued under the exemptions of this amendment, but this proviso could in no way be construed to mean that, if the revenue from that source was not sufficient to pay the bonds, a tax could not be levied for that purpose.

This objection is, therefore, overruled.

Objection 5.   That City Council had no right to assess abutting property and issue bonds against such assessment in that the Act of the Legislature, approved March 10, 1922 (Acts 1922, p. 1346), authorizing City Council to assess abutting property, is unconstitutional and void, because the title does not conform to the body of the Act, in that the title provides for an assessment of abutting property owners, whereas, the body of the Act provides for assessment against abutting property, and not the owners, and the Constitution only authorized the Legislature to authorize the City of Charleston to assess abutting property, and does not authorize the assessment of abutting property owners.

This objection is more technical than real.   The purpose of the Act is to make the abutting property pay for the street improvements and to give the City a lien on such property for the assessments levied.   These assessments are necessarily paid by the owner of the property, whether voluntarily or by the forced sale of his abutting property;

therefore, when the title uses the expression, "assessment upon abutting property owners," and the body of the Act provides for assessment against abutting property and for a lien on the abutting property to enforce the collection, it can hardly be said that the title of the Act does not conform to the body; for, as said above, the property owner pays the assessment, whether in the shape of cash or enforcement of lien against his abutting property. There is no personal lien anywhere provided for in the Act, but the lien and source of involuntary collection is solely against the property; therefore, the authority given to the General Assembly by the Constitution to authorize the City of Charleston to assess abutting property was in no way exceeded by the Act. The mere insertion of the word "owners" in the title could not be misleading as to the contents of the body of the Act.

Objection 2. That the amount of the issue of bonds being limited to the amount of unpaid assessments, the issue will be illegal in that the assessment levied against the abutting property owned by plaintiff, Sullivan, is excessive, and does not represent the actual cost of improvements made, and assessments have been levied against her property for improvements which have not been made, and other abutting property on said street has been likewise assessed, and, therefore, if the true amount of legal assessments was ascertained the amount due thereon would be found to be less than the amount of the bonds proposed to be issued.

The complaint of Smith specifically sets up the item of unconstitutional and illegal charge, being $246.53, alleged cost of a drain which had not been laid in the present improvements of the street, but had been installed by City Council in 1854, and the cost thereof at that time paid out of the general funds of the City.

Under the Sullivan claim it was admitted that in the assessment made there was included as part of the actual cost of the work estimated supervision charge. And this was

alleged to be illegal. This charge appeared in the total of the assessment against her property as appeared in the assessment roll filed with City Treasurer.

In connection with the issues raised by these objections there are four questions to be considered:

(1) Is the limitation of time fixed by statute and ordinances in which the legality and validity of the assessment may be attacked a legal limitation?

(2) If attack is not made within that limit of time, is the owner of the property against which the assessment is made estopped from thereafter making such attack?

(3) Is this estoppel operative even if the assessment was unconstitutional?

(4) Has the City Council the right to levy an assessment against the abutting property of plaintiff, Smith, representing the cost of a drain in the street in front of such property, which was laid in 1854, the cost of which, at that time, was paid out of the general funds of the City?

The Act of 1922 (Acts 1922, p. 1346), authorizing the City of Charleston to levy and enforce an assessment against abutting property, etc., provided for notice of the filing of the assessment roll to be published in the official journal, and during one week after the first publication thereof all persons concerned had the right to file in writing with the City Treasurer such exceptions and objections to the proposed assessment as they may desire. If no exceptions are filed, or after exceptions are disposed of, City Council, by ordinance or resolution, shall confirm said assessments, and no appeal from the order of confirmation of assessments shall be permitted and no attack upon such assessments shall be made after ten days from the date of confirmation by said City Council. City Council by ordinance ratified April 18, 1922, contained the same provisions.

The question under consideration has been decided in many States, and an exhaustive discussion of the question may be found in the note 9 A. L. R., page 635, *et seq.* At

page 662 of 9 A. L. R., the following proposition is laid down with innumerable authorities to sustain it: "In the ordinary course of procedure for the making of a street or sewer improvement and the laying of the assessment therefor, provision is made for the hearing of the objections of property owners. It seems to be the general rule that the failure to urge an objection at such hearing estops a property owner from raising it subsequently." And again, at page 698 of A. L. R.: "Where a property owner has an opportunity given him, under the prescribed proceedings, to appear and contest the question before the local authorities whose duty it is to pass on objections, their determination on the subject of benefits is final, and, if he fails to avail himself of the opportunity provided, he thereby admits the finality of the determination, and is estopped to raise the question in subsequent proceedings." And at page 738 of 9 A. L. R.: "The general rule is that objections to an assessment are deemed to be waived, if not presented at the time and in the manner prescribed by law"—and citing from *Hildreth v. Longmont*, 47 Colo., 79; 105 Pac., 107: "Reasonable limitations regarding the time within which actions can be commenced attacking the validity of special assessments for public improvements are necessary. To meet the expenses of such improvements, bonds must be negotiated, and, unless there is some reasonable limit within which actions may be commenced to attack assessments levied for the purpose of liquidating such bonds when they mature, they could not be disposed of advantageously, because parties purchasing would never know when an action might be commenced by some dissatisfied taxpayer; and, on the other hand, after the lapse of the statutory period, they would have the right to presume no such actions could be maintained, and their rights ought to be protected by a statute which fixes a time within which suits must be commenced, unless it is apparent that thereby some constitutional right * * * has been denied or invaded."

So also authorities cited at pages 744 and 745 of 9 A. L. R.

It will thus be seen that the authority is overwhelming that the failure to file objections within the time fixed by statute operates as an estoppel.

The Legislature has seen fit to fix ten days after confir-mation of assessment as a reasonable time, and I see no reason for holding otherwise. The property owner has no-tice of the proposed assessment for one week after the as-sessment roll is filed with City Treasurer, and, if he does not exercise his right of objection within that week, he still has ten days after the assessments have been con-firmed by City Council to make such attack as he sees fit—a total, at the least, of 17 days. To me this seems a reasonable limit, and I so hold. Neither of the plaintiffs herein took any action during the time limited, and I hold they are estopped from setting up objections to the legality or validity of the assessments, except as to a violation of a constitutional right, which exception will be hereinafter considered.

Smith has set up various reasons for his failure to make his attack during the limit of time fixed by statute. I do not think these should be considered. There must be a fixed period of limitation of attack, and, if this period could be opened under the guise of one excuse or the other, then there could be no definite period after which a person could rely on the validity of the assessment.

(3) On the third question, I hold the estoppel above re-ferred to would not be operative if the assessment was un-constitutional. All of the cases cited or referred to in American Law Reports above sustain the finding, and need not be specifically set forth.

This then brings me to the question: Was the assessment against the property of Smith for a drain which had been laid many years prior to the street improvements under consideration an unconstitutional assessment?

Under amendment to Section 14a, Art. 10, of the Constitution (Acts 1919, p. 25), the General Assembly was empowered to authorize the corporate authorities of the City of Charleston to levy an assessment upon abutting property for the purpose of paying for permanent improvements in streets and sidewalks immediately abutting such property, etc., and the curbing of the streets and for drains abutting such property without the consent of the owner of the property abutting upon the streets proposed to be improved, or where curbing is to be placed or drains laid, and without paying for any of the costs of such improvements; and thereafter by Act approved March 10, 1922 (Acts 1922, p. 1346), the General Assembly authorized and empowered the City Council of Charleston to levy an assessment upon abutting property for the purpose of paying for permanent improvements on streets, the intersection of streets and sidewalks, and paying for curbing of streets and for drains abutting such property on the street or sidewalks, or part thereof improved or intended to be improved, or on which curbing or drains are laid or intended to be laid all or any of them, and therein directed that assessments should be made in such manner as council should direct. By ordinance ratified April 18, 1922, city council adopted a general ordinance providing for street improvements in the City of Charleston and the assessment of abutting property to meet the cost thereof, and therein provided in subdivision D of Section 3 that, "should subsurface drains, manholes, etc., have been installed in a street or portion thereof in advance of paving, so much of the cost of installation of such subsurface drains, etc., as would be equivalent to the cost of installing subsurface drains twelve inches in diameter and all work incidental thereto shall be included in the cost of paving, just as though such subsurface drains, etc., had not been previously installed."

It appears that in the year 1854 a subsurface drain more than 12 inches in diameter had been installed by the city

council of Charleston, and paid for out of the general funds of the city, in that portion of Meeting street on which the plaintiff Smith's property abuts; that city council in the recent paving of Meeting street assessed the property of Smith for its proportion of the cost of a 12-inch drain as if the same had been laid. Was this assessment constitutional?

In *Mauldin v. City Council,* 53 S. C., at page 285, 31 S. E., 252, 43 L. R. A. 101, 69 Am. St. Rep., 855, it was decided that since the adoption of the Constitutions of 1868 and 1895 assessments against abutting property for the cost of street improvements were unconstitutional. Prior to 1868 City Council had the right to make such assessments. *State v. City Council,* 46 S. C. L. (12 Rich.), 702; *City Council v. Pinckney,* 5 S. C. L. (3 Brev.), 217.

The amendment above referred to and the Act of the General Assembly pursuant thereto again vested in City Council the power of assessing abutting property for drains, for, in the words of the Constitution, "drains abutting such property," and, in the words of the Act, "paying for curbing of streets and for drains abutting such property in proportion to the frontage of such property on the street or sidewalks or part thereof improved or intended to be improved, or on which curbing or drains are laid or intended to be laid, all or any of them." City Council, in regulating what charges were to be made, provided by ordinance that where a subsurface drain had been laid previous to the improvement of the roadway, a charge for such subsurface drain up to 12 inches should be included in the assessment against abutting property as if it had been laid at that time.

The exercise of this right is the cause of the Smith suit. It at first struck me as an unreasonable proposition that in 1922 City Council would have the right to make an assessment for street improvement made in 1854, a lapse of 68 years, especially as it had the right to make the asessment at the time the improvement was made; but upon considera-

tion I realized that it was not an unfair act. City Council, in improving streets in which there is no drain, now assesses abutting property for the cost of such drain; therefore, why should it not have the right, in improving a street in which drain had already been laid, the cost of which had been paid for out of the general fund, to reimburse its treasury for the amount so paid out by then assessing the abutting property therefor?

This right has been recognized by the Supreme Court of the United States. *Seattle v. Kelleher*, 195 U. S., 351; 25 Sup. Ct., 44; 49 L. Ed., 232. "A special assessment may be levied upon an executed consideration, that is to say, for a public work already done." *Wagner v. Leser*, 239 U. S., 207; 36 Sup. Ct., 66; 60 L. Ed., 230. "So far as any Federal constitutional requirement is concerned, the State might exercise its authority to assess because of this special benefit although that assessment was deferred for some time after the work was done at the public expense. * * * There can be no question that paving with brick in front of the property of the complainant conferred a substantial benefit, and gave authority for the subsequent legislation which, because of that benefit, original and continuing, warranted an assessment upon the property owner for a confessedly public purpose—the improvement of the streets of the City."

The principle involved in all considerations of assessments for street improvements is the benefit accruing, and it is based on such benefits that the right to assess exists. It has been recognized and established that a drain confers that benefit, and the whole intent and purport of the constitutional amendment was to permit an assessment for such benefit. Therefore, it seems to me that a proper exercise of that permission enables the assessment to be made, irrespective of the time when the benefit was conferred. As was said in *Wagner v. Leser, supra,* the benefit is original and continuing, and the right to assess, being given, follows the benefit from its inception. Why should Smith's property

escape assessment for this benefit, when other property in the City of Charleston does not escape for a like benefit? Smith says because it was conferred 68 years ago, and if you had intended to make me pay for that benefit, you should have done so at the time it was conferred, and by failing to do so within a reasonable time you have waived your right.

But what right has he to say this? Has the failure during that period deprived him of any rights? It is true the property might have changed ownership during that long period, and the present owner contend that he is now charged with a burden he knew nothing of; but he is answered that he knew or must have known the drain was there; that it is a benefit which, if not already contributed to by his property, was liable for such contribution. As was said in *Seattle v. Kelleher, supra:* "Whether it has been paid for was for him to inquire. The history of what had happened would have suggested that it was not improbable that sooner or later a payment must be made." I know of no statute of limitation which would bar the exercise of the right. The assessment is not a tax which would be collectible each year from the failure to collect which for a long period would create such unreasonable delay as would amount to laches (*Milster v. Spartanburg,* 68 S. C., 26; 46 S. E., 539); but it is an assessment for a benefit conferred, original and continuing, and when the condition arose, by reason of the assessment of other property for the same benefit, it became right and proper that this property should also pay its dues; it was the duty and right of City Council to make such assessment. In this view of the law and construction of the constitutional amendment, I can see no violation of the Constitution. I, therefore, hold that the assessment for the drain was not unconstitutional.

It is, therefore, ordered, adjudged, and decreed that the complaint in both of the above cases be dismissed, and the injunctions refused; and it is so ordered.

*Messrs. Nathans & Sinkler,* for Lucy J. Sullivan, appellant, cite: *Provisions of Art.* 8*, Sec. 7, as amended* (32 Stat., 69)*, and Art.* 2*, Sec.* 13*, Constitution S. C.,* 1895 *not complied with. Right of citizen to object:* 54 S. C., 127. *Assessment levied under amendment to Sec.* 14A*, Art.* 10*, Constitution* 1895*, and Act of* 1922*, p.* 1346.

*Messrs. Hagood, Rivers & Young,* for Henry A. M. Smith, appellant, cite: *City had right to assess abutting property for drains in* 1854: 5 S. C. L., 217; 46 S. C. L., 702. *Constitution* 1895 *prohibited such assessments:* 53 S. C., 285. *Power of Legislature to enact retrospective laws:* 55 S. C., 295; Potter's Dwarris on Stats., 64, 162; 20 Wall, 187; 112 U. S., 559, 231 U. S., 199; 114 U. S., 511; 264 Fed., 169; 112 S. E., 261. *Collection of taxes barred by laches:* 68 S. C., 26. *Constitutional question can now be raised:* 23 S. C., 57; 2 N. E., 691; 72 N. E., 1022.

*Mr. John I. Cosgrove,* for respondent, cites: *Estoppel:* 111 Fed., 8; 55 S. C., 90; 54 S. C., 127. *Act constitutional:* 62 S. C., 332; 79 S. C., 96; 116 S. C., 200. *Subsequent assessment may be levied for work already done:* 239 U. S., 207; 2 N. E., 690; 72 N. E., 1023; 59 N. E., 68; 5 Ohio St., 225; 37 N. Y., 267; 45 N. J. L., 104; 24 Mich., 322; 2 Dillon Mun. Corp. (4th Ed.), Sec. 814; 23 Atl., 276; 235 U. S., 45; 2 Atl., 627. *Equitable estoppel:* 10 R. C. L., 399. *State not estopped to collect taxes:* 37 Cyc., 726.

February 8, 1923.

The opinion of the Court was delivered by Mr. Justice Cothran.

These two cases were heard by consent together by Hon. John S. Wilson, Circuit Judge, at the October term, 1922, of the Court of Common Pleas for Charleston County.

It appears that they were heard upon the pleadings, certain exhibits, and certain admissions, which are set forth in the circuit decree, which will be reported.

The cases are very different in their facts and purposes, having, as I understand, only a single element in common,

and, according to my notion, should be considered and determined separately.

## THE SULLIVAN ACTION

Lucy C. Sullivan, a citizen and taxpayer in the city of Charleston, by her complaint seeks to enjoin the city council of Charleston from issuing $193,000 of bonds. These bonds which the city council proposes to issue represent the amount due to the city upon unpaid assessments upon abutting property for permanent street improvements. The object of the proposed issue of bonds is nothing more than to provide a convenient and available method of negotiating the assets of the city, now in the form of assessments upon abutting property, in order to raise funds for the immediate prosecution of the work of permanent improvement contemplated.

The authority of the city council to levy the assessments and to issue the proposed bonds is claimed under the following constitutional, statutory, and municipal provisions:

The amendment to Section 14a of Article 10 of the Constitution, ratified February 15, 1919 (31 Stat., 25), is as follows:

"The General Assembly may authorize the corporate authorities of the cities of Charleston and Beaufort to levy an assessment upon abutting property for the purpose of paying for permanent improvements on streets and sidewalks immediately abutting such property, and in the city of Charleston to pay for the permanent improvement of intersection of streets and for placing curbing and for laying drains abutting such property: *Provided,* That said improvements be ordered only upon the written consent of two-thirds of the owners of the property abutting upon the street, sidewalk, or part of either, proposed to be improved, and upon condition that said corporate authorities shall pay at least one-half of the costs of such improvements. But this provision shall not apply to the city of Charleston, in

which city the city council shall have the right to levy an assessment upon abutting property for the purpose of paying for permanent improvements on streets, the intersection of streets and sidewalks, and to pay for curbing of streets and for drains abutting such property, without the consent of the owner of the property abutting upon the streets, intersection of streets, sidewalks, or a part of either, proposed to be improved, or where curbing is to be placed or drains laid, and without paying for any of the costs of such improvements."

On July 15, 1921, a petition was filed with the city council, purporting to be signed by a majority of the freeholders of the city, praying that an election be held on "the question of issuing bonds or certificates of indebtedness by the city of Charleston, the said bonds or certificates of indebtedness to be issued from time to time in such amounts, denominations, and rates of interest as shall appear necessary to the city council of Charleston, for the placing of permanent improvements on streets, the intersection of streets and sidewalks, and for curbing of streets and drains, in the city of Charleston, the proceeds of said bonds or certificates of indebtedness to be applied solely and exclusively to the payment of such improvements on streets and sidewalks, and for curbing of streets and drains, and the entire revenue accruing from assessments to be levied by the city council of Charleston upon abutting property as provided in and by the amendment to Section 14a, Article 10 of the Constitution of the State of South Carolina, ratified February 15, 1919, to be devoted solely and exclusively to the payment of said bonds or certificates of indebtedness."

On the same day, July 15, 1921, the city council adopted an ordinance ordering an election to be held on November 8, 1921, upon the question above stated. This election was held as ordered, and the commissioners of election made return to the effect that a majority of the qualified voters voting at said election voted in favor of the issuance of the

bonds or certificates of indebtedness as the question was submitted to them.

The Act of 1922 (32 Stat., p. 1346), as authorized by the amendment of 1919 to Section 14a of Article 10 of the Constitution, confers upon the city of Charleston the authority and power to levy assessments upon abutting property for the purposes stated in said amendment. The Act prescribes the manner in which such assessments shall be made—that is, in such manner as the city council shall direct. It further provides that no assessments shall be laid or confirmed until after at least one week's publication shall have been given that the assessment roll, containing the proposed assessments against each property owner, is in the office of the city treasurer and will there remain for one week, within which time objections and exceptions to the proposed assessments must be made. Provision is made for the hearing of such objections or exceptions. It is further provided that, if no objection be made, or if made and disposed of, the city council shall by ordinance or resolution confirm the assessments, and that no appeal from the order of confirmation of assessments, or attack upon the assessments, shall be made after the expiration of ten days from the date of confirmation. The Act further provides that the city council may issue bonds of the city of Charleston to pay the cost of such authorized improvements, when the question of incurring such indebtedness shall have been submitted to the freeholders and qualified voters of the city as provided in the Constitution for other bonded indebtedness; that a sinking fund shall be created for the payment of the principal and interest upon said bonds, and an annual tax shall be levied to meet the payment of the principal and interest as they become due; and that the revenue from the assessments shall be devoted exclusively to the payment of said bonds.

On April 18, 1922, the city council passed an ordinance entitled:

"An ordinance to provide for and regulate the construction of permanent improvements of the streets and sidewalks and the laying of drains in the city of Charleston, and to provide for the levy and enforcement of an assessment upon abutting property for the purpose of paying for such improvements, and authorizing the issuance of bonds or certificates of indebtedness of the city council of Charleston representing the amounts of assessments due to the said city council of Charleston as deferred payments or installments of such assessments and to provide for their payment."

The ordinance was substantially a reproduction of the provisions of the Act of 1922 above referred to.

Thereafter the city council published four times within fifteen days in the official journal of the city notice of its intention to pave that portion of Meeting Street abutting upon which the plaintiff's property is situated, and after the expiration of said period caused an assessment roll to be prepared showing the amount assessed against each abutting piece of property upon that portion of Meeting Street so paved or intended to be paved, and lodged the assessment roll with the city treasurer. The city treasurer then published a notice that the assessment roll was in his office, and would there remain for one week from the date of publication, and requiring all persons to file in writing with him, during that period of one week, such objections or exceptions as they desired to make against the proposed assessments. Neither the plaintiff nor any one else filed any objections or exceptions thereto. Thereupon the city council by ordinance confirmed the assessments so laid, and entered the same upon the Assessment Liens Book prescribed to be kept by the Act of 1922 and said ordinance of the city. No appeal was filed by the plaintiff, or by any one else, from said confirmation, nor was any attack made upon the assessments within the ten days provided in the Act.

On February 24, 1921 (32 Stat., 69), the following amendment to Article 8, Section 7, of the Constitution, relating to the limit of bonded debt of cities, was ratified:

"That the limitations imposed by this Section and by Section 5, Article X, of the Constitution shall not apply to the bonded indebtedness incurred by the city of Charleston, nor to the issuing of certificates of indebtedness by said city, where the proceeds of said bonds or certificates of indebtedness are applied solely and exclusively to the payment of permanent improvements on streets, the intersection of streets and sidewalks and for curbing of streets and for drains, when the city council of said city shall levy an assessment upon abutting property, as provided in and by the amendment to Section 14a, Article X, of said Constitution, ratified February 15, 1919, and where the entire revenue arising from the assessments so levied by the city council of said city shall be devoted solely and exclusively to the payment of said bonds or certificates of indebtedness and where the question of incurring such indebtedness is submitted to the freeholders and qualified voters of said city, as provided in the Constitution upon other bonded indebtedness."

The plaintiff, Lucy C. Sullivan, urged the following objections to the bond issue:

(1) That the petition for the election upon the question of issuing bonds was not signed by a majority of the freeholders of the city.

(2) That the assessments against the property of the plaintiff is excessive, as are also the assessments against the other abutting properties on Meeting Street, and that, if a true and correct assessment were made, it should be shown that the amount due on assessments properly laid for the correct amount thereof would not amount to the sum of $193,000 and bonds to that amount cannot legally be issued by the city.

(3) That the proposition submitted at the election held on November 8, 1921, was void for indefiniteness, in that neither an exact amount nor a maximum amount of bonds to be issued was stated in that proposition.

(4) That the amendment of 1921 (Article 8, Section 7), in requiring the entire revenue from the assessments to be devoted to the payment of the bonds, impliedly prohibits the levy of the tax provided for in the ordinance of April 18, 1922, for interest and sinking fund for the bonds.

(5) That the title of the Act of 1922 does not conform to the body thereof, in that the title provides for an assessment of abutting property owners, while the body provides for an assessment upon abutting property.

As to the first objection: The reasoning and conclusions of the Circuit Judge satisfactorily disposes of this objection. In addition thereto it may be suggested that this matter does not come up upon a demurrer to the complaint, where the facts properly pleaded are admitted to be true, but was before the Court upon the pleadings and certain admitted facts. There is nothing before the Court by way of evidence or admission tending to sustain the facts thus relied upon.

As to the second objection: There is nothing before the Court to sustain the allegation that the assessment upon the plaintiff is excessive. There is nothing to sustain the allegation that the assessments upon other abutting property owners are excessive, with the debatable exception of the assessment upon the property of the other plaintiff, Henry A. M. Smith. The amount of that assessment claimed by him to be excessive is only $246.53, the entire assessment aggregating $193,086.31; and, even if the plaintiff Sullivan should be entitled to go into the case of the plaintiff, tried at the same time, but each standing upon its own facts, the discrepancy of $160.22 is too small for consideration. If that should prove to be the only objection to the proposed issue of $193,000 of bonds, it is hardly

conceivable that the entire issue should be invalidated on that account.

As to the third objection: The case of *Dick v. Scarborough,* 73 S. C., 150; 53 S. E., 86, completely explodes the notion that the election upon a bond issue is invalid unless the exact amount, or a maximum amount of the proposed issue, is expressed in the petition or in the order of an election. In that case the election was ordered, and the issue to be determined was thus expressed:

"Shall the city of Sumter purchase the property and rights of the Sumter Water Power Company and issue bonds in payment thereof in such amount as may be necessary?"

The same objection as here was raised to the validity of the election. The Court held:

"The facts of this case do not warrant the Court in sustaining the objection to the form of the ballot. Without doubt it is *safer* in such elections (not *essential*), to have the ballot express the precise amount to which it is proposed to issue bonds, for then there can be no doubt of the voter having *fair notice* of the import of his vote. But there is no statutory (or constitutional) provision as to the form of the ballot, and the most that the Court can require in this respect is that the voter have reasonable notice of the election and the issue it involved." (Italics and parentheses added.)

The Court lays some stress upon the fact that the purchase price of the waterworks had been agreed upon by the city council, and that the public had been informed of it. This, while persuasive, could not have been controlling, for no binding contract was or could have been made prior to the election; and, if no price had been mentioned, the election would still have been valid in that each voter had reasonable notice of the election and the issue involved. So in the case at bar the city council proposed to proceed under the amendment to Section 14a, Art. 10, of the Constitution, by levying assessments upon abutting property for certain

improvements. The assessments were capable of definite and certain ascertainment and were definitely and certainly ascertained before the bonds were proposed to be issued. The money had to be raised in order to prosecute the work, either by hypothecating the unpaid assessments or by issuing bonds corresponding in amount, which, as a convenient method of negotiation, was very properly adopted.

The precise amount of bonds to be issued, corresponding to the amount of the assessments which were *in futuro* could not possibly have been ascertained at the time of the election; but the proposed plan was plain, easily understood, and susceptible of definite ascertainment, and each voter necessarily had "reasonable notice of the election and the issue it involved." A contrary conclusion would shut the city council up to the alternative of hawking the individual assessments in a financial market suspicious of such abnormal securities, where they would encounter either an inability to realize upon them or suffer a loss by heavy discount.

As this Court has said in the case of *Trimmier v. Bomar,* 20 S. C., 361:

"In elections the great matter is the result. Where this is clearly ascertained, it sweeps away all technicalities. * * * Certainly manner and form should not be allowed to defeat the undoubted will of the people clearly expressed. This would be indeed subordinating and sacrificing the substance to the shadow."

Beyond the protection to life, liberty, and property which the law guarantees, the greatest benefit which the average citizen obtains from his government is the enjoyment of good roads, good streets, and good schools. An advance along these lines should not be discouraged; and in the absence of any statutory or constitutional requirement that a definite or maximum amount be specified in the election issue, and in an instance of practical unanimity as to a proposition feasible and approved, it should not be withered

by a strained and technical construction.   Obstructionists
to public enterprise and progress always appear; and while
their legal rights must be respected, the enterprise and prog-
ress should not be balked except upon the plain demonstra-
tion of such legal rights.

In *Cheyenne. v. State,* 17 Wyo., 90; 96 Pac., 244, it is
held:

"A Statute authorizing the issuance by municipalities of
bonds for public improvements should be construed so as
not to defeat the manifest object of the enactment, and
hence a substantial compliance with the formalities in sub-
mitting the question of a bond issue to the voters, is gen-
erally sufficient."

In *Hughes v. Sapulpa,* 75 Okla., 149; 182 Pac., 511,
it is held:

"Irregularities in a municipal bond election not tending
to affect results are not to defeat the will of the majority,
which is to be respected, even when irregularly expressed."

Moreover, it is not by any means an unreasonable con-
struction of the amendment of 1921 to Section 14a, of
Article 10 of the Constitution that the very course adopted
here is authorized thereby.   If the amendment had been
intended to require the levy of assessments to precede the
election on the question of issuing bonds, the expression
would have been "when the city council shall have levied
an assessment," instead of as it is "when the city council
shall levy," denoting futurity, and not a condition prece-
dent.

In *Bosworth v. Middlesboro,* 190 Ky., 246; 227 S. W.,
170, the question printed upon the ballot was: "Are you in
favor of the improvement bond issue?"   It was contended
as here, that the question did not state the amount of the
bond proposed to be issued; that it presented an issue so
indefinite as to be incapable of intelligent action upon it.
The Court held that: "The voters must have understood
that the indebtedness was proposed to be created to the

extent and to the amount allowed by the constitutional limitations and manifestly could not have been misled, nor failed to have understood the extent of debt proposed to be created."

In *Moores v. Board,* 189 Ky., 148; 224 S. W., 645, it was held that in view of the Statute authorizing trustees to call elections for the issuance of bonds, and expressly prescribing that the amount should not exceed a certain limit, it was not a valid objection that the order calling the election did not fix the limitation on the amount of bonds. The Court quotes from another case with approval:

"The voters are presumed to possess sufficient intelligence to understand the Constitution and laws of the State, and to know in a general way what bonded indebtedness they are willing to bear for the purposes of education; therefore the resolution and the notice of the election, it seems to us, gave them sufficient data by which they could intelligently determine how they desire to vote upon the proposition of issuing the bonds. They knew, as said before, that the indebtedness could not exceed $10,000 in all events, and that it was the desire of the trustees to issue bonds up to the full constitutional limit, whatever that was, not to exceed $10,000. *'Id certum est quod certum reddi potest.'* "

As to the fourth objection: No authorities are cited by the appellant to sustain the proposition contended for in this objection. The fact that under the amendment of 1921 the city is authorized to issue bonds for the purpose of street improvements necessarily constitutes them obligations of the city. The provision that "the entire revenue arising from the assessments so levied by the city council shall be devoted solely and exclusively to the payment of said bonds" can in no wise affect that obligation, but is simply security therefor and a precaution against the city diverting it to other purposes—an attractive feature to a purchaser of the bonds.

As to the fifth objection: This is the limit of microscopic criticism. There can be no appreciable difference between the two provisions. Besides, in the body of the Act the terms are used interchangeably, and in several places reference is made to "the proposed assessment against each property owner"; that the assessments "may be enforced as the payment of city taxes is enforced," which implies personal obligations; "such assessments shall become due and payable"; "assessments to be made against abutting property owners."

## THE SMITH ACTION

The plaintiff in this action does not make common cause with the plaintiff in the Sullivan action in her attack upon the proposed bond issue. His sole contention is that the city council had no right to include in the assessment against his property abutting on Meeting Street the item $246.53, as the equivalent in cost of installing a drain twelve inches in diameter in place of the drain then existing.

It appears that in the year 1854 a subsurface drain more than twelve inches in diameter was installed by the city in that portion of Meeting Street on which the plaintiff Smith's property abuts, which at that time was paid for out of the general fund of the city.

The city council claims the right to impose this assessment upon the plaintiff's property under the following provision of its ordinance of April, 1922:

"Should subsurface * * * drains have been installed in a street or portion thereof in advance of paving, so much of the cost of installation of such surface drains * * * as would be equivalent to the cost of installing subsurface drains twelve inches in diameter, and all work incidental thereto, shall be included in the cost of paving, just as though such subsurface drains * * * had not been previously installed."

9—S. C.—123

Their claim of right under this provision of their ordinance is based upon the several constitutional and statutory enactments hereinbefore set out in the discussion of the Sullivan action.

Under the following authorities there does not appear to be any question that, if the constitutional and statutory enactments make provision for it, "a subsequent assessment may be levied because of the benefits conferred by the former action of the city in improving in front of the lots assessed"; *Wagner v. Leser,* 239 U. S., 207; 36 Sup. Ct., 66; 60 L. Ed., 230; *Seattle v. Kelleher,* 195 U. S., 351; 25 Sup. Ct., 44; 49 L. Ed., 232; *Leominster v. Conant,* 139 Mass., 384; 2 N. E., 690; *Warren v. Com'rs.,* 187 Mass., 290; 72 N. E., 1023; *Hall v. Com'rs.,* 177 Mass., 434; 59 N. E., 68; *Butler v. Toledo,* 5 Ohio St., 225; *Howell v. Buffalo,* 37 N. Y., 267; *Righter v. Mayor,* 45 N. J. Law, 104; *Brevoort v. Detroit,* 24 Mich., 322; 2 Dill M. C. (4th Ed.), Section 814; *Davis v. Newark,* 54 N. J. Law, 144; 23 Atl., 276; *Willoughby v. Chicago,* 235 U. S., 45; 35 Sup. Ct., 23; 59 L. Ed., 123; *Re O'Mara,* 194 Pa., 86; 45 Atl., 127; *Jelliff v. Newark,* 48 N. J. Law, 101; 2 Atl., 627.

The question is not whether the constitutional and statutory enactments were intended to have a retrospective as well as prospective effect, but it is whether or not these enactments were intended to have a present application to improvements which had theretofore been installed. The admitted law, which has been cited, that a Statute will not be given a retrospective effect unless such intention clearly appear, is therefore inapplicable to the issue; for it is impossible to read the authorities from the highest Court in the land, with a disposition to be controlled by them, without coming to the conclusion that, if the enactments were intended to have a present application to improvements constructed and paid for prior to their passage, there is no constitutional or other legal objection to their enforcement.

The primary authority in the matter of assessments upon abutting property for street improvement, so far as the city is concerned, is in the amendment of 1919 to Section 14a of Article 10 of the Constitution. There the city council is authorized (or the General Assembly is authorized to authorize them) "to levy an assessment upon abutting property, for the purpose of paying for permanent improvements on streets * * * and to pay for * * * drains abutting such property, without the consent of the owners of the property abutting upon the street * * * proposed to be improved or where curbing is to be placed or drains laid."

It would be difficult to extract from this grant the authority to assess abutting property for improvements not only proposed to be made, but for those already made, or for drains not only to be laid, but for those already laid. The inclusion of the one would appear to be the exclusion of the other.

The Act of 1922 (32 Stat., 1346), passed in pursuance of the amendment of 1919, goes somewhat beyond the terms of the amendment. It provides that the city council shall have the power of assessment in reference to streets "improved or intended to be improved," or in which "drains are laid or intended to be laid."

If the question turned upon the construction of the Act, there could be little doubt of the correctness of the city's contention; but, unfortunately for it, the source of their authority is the amendment, and not the Act, and the latter is necessarily limited by the grant in the amendment, which does not cover streets theretofore improved or drains theretofore laid.

An inequality exists under the ordinance in the matter of assessments for the equivalent costs of drains, between the owners of lots abutting an improved street and those of lots abutting an unimproved street, in each of which a prehistoric drain may exist. The former would pay; the latter

not; for the assessment can be made only "in advance of paving," which means that the street is to be improved.

A point common to both cases: The respondent urges as a conclusive obstacle to the actions by both of the plaintiffs that neither has availed himself or herself of the privilege of objecting to the assessments within the time fixed by the Act of 1922, and are estopped now from doing so.

Under the Act the property owner receives notice of the proposed assessment for one week after the assessment roll has been filed with the city treasurer. If he does not exercise his right of objection within that week, he still has ten days after the assessments have been confirmed by the city council to make such attack as he deems proper. After the expiration of that time "no appeal from the order of confirmation of assessments shall be permitted and no attack upon such assessments shall be made."

It is not deemed necessary to consider this contention of the respondent for the reason that the issues already determined dispose of the Sullivan appeal; and as to the Smith appeal the Circuit Judge held: "I hold the estoppel above referred to would not be operative if the assessment was unconstitutional," from which there is no appeal. It has been concluded that the assessment upon the Smith property for the pre-existing drain is not authorized by the Constitution, and under the ruling stated he would not be estopped.

The judgment of this Court is that the decree of the Circuit Court, in so far as it affects the Sullivan action, be affirmed, and that, so far as it affects the Smith action, it be reversed.

Mr. Justice Marion and Mr. Chief Justice Gary concur.

Mr. Justice Watts did not sit, but participated.

Mr. Justice Fraser (dissenting): These are proceedings for injunction against the levy of an assessment on certain property in the city of Charleston for street improvements, and an injunction against the issuance of bonds

to pay for the same. The injunction was refused. The facts are set forth in the Circuit decree as follows:

"The above two cases were heard by me, and, as the objections raised in subdivision 2 of allegation 5 of the Sullivan suit involved the question raised in the Smith suit, it was agreed by counsel that the cases should be heard together and decided at the same time.

"It was admitted in both cases that the citations from the Constitution, Acts of the General Assembly, and ordinances of city council set forth in the respective pleadings were correctly set forth; that notices of the proposed improvements of Meeting Street, on which the property involved is situate, was given by city council by publication in the official journal of the city four times within fifteen days, and, the contract for such improvements having been made by city council, an assessment roll was filed with city treasurer showing the assessment against, among others, the property owned by each plaintiff herein; that notice was published by city treasurer in the journal of city council that such assessment roll was in his office and would remain there for one week from the date of the publication, and that all persons concerned could within that time file objections or exceptions thereto; that no objections were filed during that week; that thereafter city council confirmed said assessments, and the same were entered in the Assessment Liens Book kept by city treasurer; the publication of the ordinance of city council ratified April 18, 1922, referred to in the pleadings, was made in the official journal of city council on April 20, 1922; that no attack upon said assessments was made by either of the plaintiffs within ten days after the confirmation of the assessments; that city council had by ordinance declared that, as appears by Assessment Liens Book of the city of Charleston, there was outstanding and unpaid on the assessments levied against abutting property to meet the cost of permanent improvements on streets, the intersection of streets and sidewalks,

and for curbing of streets and drains in the city of Charleston, the sum of $193,086.31, and directed the issuance of $193,000 of bonds of the city of Charleston, and directed the application of the proceeds of said assessments, when collected, solely to the payment of said bonds; that said bonds have never been actually issued and are still in the hands of the city council.

"It was further admitted that the statements of the plaintiff, Henry A. M. Smith, as to his business engagements and his correspondence with city council and assessment notices as received, all of which are set forth in his reply, are correct.

"It was further admitted that the assessment roll as filed with city treasurer covering the assessment against the property of plaintiff Henry A. M. Smith had the following entries: 26–24 Meeting Street roadway, $236.60; proportion of intersections, $8.37; 12-inch drain, $246.53; curb, $59.62.

"It was further admitted that at the time of the improvement of the roadway on which premises 26–24 Meeting Street abuts no new drain was laid, but that an old drain in excess of 12 inches which had been laid by city council about the year 1854, and paid for at that time out of the general funds of the city, was in said street and allowed to remain there, and that the item in the assessment roll '12-inch drain $246.53' represented the assessment which could have been made, if the cost were really so much, against said property, if a new 12-inch drain had been laid at the time of paving the roadway.

"The suit of Lucy C. Sullivan is for an injunction restraining the issuance of the bonds, and the suit of Henry A. M. Smith is for an injunction restraining city council from claiming any lien upon his property by reason of the assessment of $246.53 for drains and from collecting the same."

I. The first question to be. considered is: Can the city levy this assessment for drains laid prior to the passage of the constitutional amendment of 1919?

The amendment, so far as this case is concerned, reads:

"The General Assembly may authorize the corporate authorities of the cities of Charleston and Beaufort to levy an assessment upon abutting property for the purpose of paying for permanent improvements on streets and side-walks, immediately abutting such property and in the city of Charleston to pay for the permanent improvement of intersecting streets and for placing curbing and for *laying drains abutting such property."* (Taken from respondent's argument.)

It will be noted that the provision is to provide payment "for laying drains." There is nothing in the record to show, and it is not claimed, that the drains already there have not been paid for. There are more than three periods of the "Twenty-year presumption of payment" that have expired. The proposion is for payment, and not for re-payment. *Curtis v. Renneker,* 34 S. C., 491; 13 S. E., 664.

The rule that a Statute will never be given such construction (retroactive), unless it is required. by express words of the Statute, or must necessarily be implied from such words, is too well settled to need the citation of any authority to support it.

Before the constitutional amendment of 1919 there could have beeen no assessment of abutting property. The amendment is clearly not retroactive, and the Statute and ordinance need not be considered on this point. The exceptions that raise this question should be sustained.

II. Is it necessary for the voters to know the amount or a maximum amount of the bond issue?

In *Dick v. Scarborough,* 73 S. C., 154; 53 S. E., 86, the bond issue was sustained because the voters had official knowledge as to the approximate amount of the bond issue. In respondent's argument it is said:

"At the time of the submission of this question to the electorate it was impossible to ascertain the exact or maximum amount of bonds to be issued."

The city council itself did not know the amount. The very fact that an election was necessary required that there should be a question to be determined. The amount of the bonds was an essential element of the election. It need not be printed on the ballot, but the voter must know the amount or there was no question to be voted on. The exception that raises this question should be sustained.

III. Was sufficient notice of the assessment given?

In respondent's argument we find:

"There is published in the daily newspaper, which is the official journal of the city, at least four times within fifteen days, notice that the city intends to improve a certain street. After the contract has been let and the assessment roll is made up and filed with the city treasurer, he then gives notice in the same newspaper that the assessment roll is on file in his office and will be there for one week, during which time the property owner can examine the same and file any objections that he might have thereto. If there are no objections filed, or even when objections have been filed, the city treasurer so reports to city council, which by ordinance duly thereafter published confirms or modifies the assessment so filed. Thereafter the abutting property owner has ten days within which to raise objections to the assessment so made, or to contest the same. Each step in the preparation and making of the assessment is fully published."

The record shows that there were 2,800 freeholders. The assessment roll was to be on file one week. It would have been utterly impossible for these 2,800 freeholders to examine the list to see what was the amount of his assessment, and yet we are asked to hold that each of the 2,800 voters is bound. This Court cannot say how long, but the time allowed must be possible. It does not appear that all

of the 2,800 were on Meeting Street, but it must appear that this was a reasonable time for inspection.

This objection should also be sustained.

The judgments should be reversed, and the injunctions granted.

MR. JUSTICE WATTS concurs.

### ON MOTION FOR MORE DEFINITE DECISION

*Per Curiam.* The points suggested in the petition of the parties hereto as to which a more definite expression is craved were substantially covered by the decision heretofore filed. The Court is of the opinion that the city council of Charleston has power to levy assessments upon the abutting property of the plaintiff for permanent improvements to streets and drains laid between the date of the ratification of the constitutional amendment ratified February 15, 1919, and the approval of the Act of the Legislature authorizing the city council of Charleston to make such assessments approved March 10, 1922, and that the city council of Charleston may assess and collect from the abutting property on Meeting Street, between Calhoun and Sheppard Streets, the cost of the drains laid on Meeting Street between July, 1920, and July, 1921.